Daniel WAITE, Sr., Appellant

v.

Margaret Susan WAITE, Appellee.

No. 14–02–01211–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 5, 2004.

Rehearing Overruled Nov. 24, 2004.

Lawrence S. Rothenberg, Houston, David E. Moody, Lubbock, for appellant.

Richard M. Grimes, Russell S. Post, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

Daniel Waite, Sr. appeals from an unequal property division awarded him in a divorce judgment. In response, his ex-wife, Margaret Susan Waite,[1] has filed a motion to dismiss his appeal because he accepted substantial benefits awarded to him in the divorce decree. Because Mrs. Waite's motion has merit, we dismiss Mr. Waite's appeal, addressing only his thirteenth issue, which claims that the trial court lacked subject matter jurisdiction over the Waites' Christian marriage. In granting Mrs. Waite's motion, we conclude that the motion was timely filed, that Mr. Waite did not prove that he accepted the benefits only because of economic necessity, and that a reversal and remand could affect Mr. Waite's rights in the property he was awarded.

## I. BACKGROUND

Daniel and Margaret married in 1968, and had four children. Near the end of the marriage, the Waites sued Mr. Waite's former employer, Dean Witter Reynolds,

Inc., for defamation. The case eventually settled in 1991 for $15 million. Several years later, Mrs. Waite sued Mr. Waite for divorce.

During the bitter and protracted divorce proceeding, the parties spent the great bulk of their time litigating the nature of the money remaining from the Dean Witter settlement. Mr. Waite argued it was his separate property; Mrs. Waite argued it was community property. By summary judgment, the trial court ruled that the settlement proceeds were community assets subject to a just and right division.[2] Ultimately the proceeds—then approximately $3 million—were placed in the registry of the court.

The parties tried the remaining issues of property division, divorce and assault to the court. It granted Mrs. Waite a divorce on the grounds of cruel treatment. It found that Mr. Waite assaulted Mrs. Waite, and ordered him to pay her $20,000. The court also ordered a just and right division of the community estate; it awarded Mr. Waite $862,997.27 of the funds in the court's registry, and awarded Mrs. Waite the balance. In addition, Mr. Waite was awarded the family residence as well as a tax refund check due on a joint return the Waites filed.

Over the course of the next few months, Mr. Waite took possession of every significant asset the court awarded him. Immediately upon entry of the judgment, Mr. Waite requested that the court release the funds to the parties in accordance with its judgment. Mrs. Waite did not object. Mr. Waite received $862,997.27 from the court registry, and Mrs. Waite received $2,085,296.52. Not long after that, Mr.

1. In the divorce decree, Peggy's last name was changed from Waite to Allen; however, for consistency, the parties' names appear as they did below.

2. TEX. FAM.CODE § 7.001.

Waite asked Mrs. Waite to convey to him her interest in the home—valued during trial at more than $300,000. She did, and, immediately, Mr. Waite filed the deed in the county property records. Several months later—and again in accordance with the provisions of the divorce decree— Mr. Waite demanded that Mrs. Waite endorse to him the federal income tax refund check issued on the parties' joint return in the amount of $5,705. At no time did Mr. Waite qualify his acceptance of the cash, the home, or the tax refund, or otherwise make his acceptance of these benefits awarded in the divorce decree subject to his right to appeal. By the time he received the tax funds, Mr. Waite had cashed or taken control of every significant asset awarded him.

Mr. Waite raises fifteen issues in this appeal;[3] however, as we stated earlier, we will address only his thirteenth issue because the remainder of his issues are rendered moot by Mrs. Waite's motion to dismiss.

## II. MR. WAITE'S CHALLENGE TO THE TRIAL COURT'S SUBJECT MATTER JURISDICTION

■ In the thirteenth issue in his appeal, Mr. Waite claims that the trial court, an institution of the State, had no subject matter jurisdiction to dissolve his marriage, which he claims is a purely ecclesiastical union. He claims that by exercising jurisdiction over him, the trial court violated his constitutional rights.

■ Subject matter jurisdiction exists by operation of law only, and "this jurisdictional prerequisite plainly cannot be conferred by consent, waiver, or estoppel at any state of a proceeding." *See Bloom v. Bloom,* 935 S.W.2d 942, 948 (Tex.App.-San Antonio 1996, no writ) (citing *Federal Underwriters Exch. v. Pugh,* 141 Tex. 539, 541, 174 S.W.2d 598, 600 (1943); *Beeson v. Beeson,* 578 S.W.2d 517, 518 (Tex.Civ.App.-El Paso 1979, no writ)). If the trial court had no subject matter jurisdiction over the Waites' marriage, the judgment is void. *See Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (per curiam) (defining a void judgment as one rendered when a court has no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court). If the judgment is void because the trial court lacked subject matter jurisdiction, we must declare the judgment void and dismiss the appeal because an appellate court has no jurisdiction to decide the merits of an appeal from a void judgment or order. *See Mellon Serv. Co. v. Touche Ross & Co.,* 946 S.W.2d 862, 864, 870 (Tex. App.-Houston [14th Dist.] 1997, no writ). This issue, then, must be the first we address, for if the claim is valid and the judgment is void, we can go no further.[4]

**3.** During the course of this litigation, Mr. Waite also filed an interlocutory appeal to challenge the trial court's appointment of a receiver, which this court dismissed as moot when the receivership was dissolved. *See Waite v. Waite,* 76 S.W.3d 222 (Tex.App.-Houston [14th Dist.] 2002, no pet.). As discussed in more detail below, Mr. Waite also appealed the trial court's denial of his request for a temporary injunction on the basis that the no-fault divorce statute is unconstitutional; this court affirmed that ruling. *See Waite v. Waite,* 64 S.W.3d 217 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Mr. Waite has also filed five mandamus petitions. *See In re*

*Daniel Waite,* No. 14–02–00116–CV; *In re Daniel Waite,* 14–02–00119–CV; *In re Daniel Waite,* 14–02–00122–CV; *In re Daniel Waite,* 14–02–00564–CV; *In re Daniel Waite,* 14–02–00711–CV.

**4.** In two other issues, Mr. Waite challenges the trial court's exclusion of evidence he contends shows that an Alabama divorce Mrs. Waite obtained in 1960 before marrying Mr. Waite was fraudulently obtained and therefore void. Mr. Waite does not challenge the trial court's denial of his plea to the jurisdiction on this basis. However, to the extent Mr. Waite may argue the trial court lacked juris-

Mr. Waite does not specifically explain how the constitutional rights he raises bar the trial court from exercising jurisdiction over his marriage and divorce. Instead, he argues generally that his marriage to Mrs. Waite is purely ecclesiastical, so that the trial court violated his Free Exercise and Establishment Clause rights under the First Amendment when it asserted jurisdiction over the Waites' marriage. We have answered this question before, although it arrived on its first visit in a different presentation. *See Waite v. Waite*, 64 S.W.3d 217, 220 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

It came to us then by an appeal of an order denying Mr. Waite's request for a temporary injunction. He had requested the trial court to forbid Mrs. Waite from relying upon certain Family Code statutes governing the dissolution of marriage. The trial court denied Mr. Waite the requested relief. In overruling Mr. Waite's issues, we described them in this way:

> Accordingly, we overrule appellant's assertion that section 6.001 violates, 1) the Establishment Clause of the U.S. Constitution because it entangles the judiciary in religious issues; and 2) the Free Exercise Clause of the U.S. Constitution and the "rights of conscience" guarantee under the Texas Constitution, because it requires the judiciary to interfere in a religious dispute.

*Id.* at 221–22. Although he does not mention Family Code section 6.001—the "no-fault" divorce statute—and although he is appealing the denial of his plea to the jurisdiction rather than the denial of the temporary injunction, the underlying issues arguably are the same. Did the trial court impermissibly interfere with religious issues? Is marriage a religious covenant and not a civil status regulated by law?

In our first opinion, a majority of the court rejected the argument that section 6.001 of the Family Code impermissibly interfered with affairs that are solely religious in nature. Today we reaffirm the principles underlying that decision.

■ Mr. Waite is mistaken that the marriage he entered into with Mrs. Waite—the license for which was obtained through a county clerk's office and the record of which is in county records in Texas—is a wholly religious union. From the beginning of our nation, the marital relationship was recognized as a most important union that the state had an interest in regulating. *Maynard v. Hill*, 125 U.S. 190, 205–06, 8 S.Ct. 723, 31 L.Ed. 654 (1888).

> Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the

diction because the earlier divorce is void, we find that contention *without merit*. Mrs. Waite placed in evidence her Alabama divorce decree. During the divorce proceedings, Mr. Waite filed suit in Alabama to collaterally attack the Alabama decree, but the Alabama Supreme Court upheld the lower court's dismissal of his action. *See Waite v. Waite, —— So.2d ——*, No. 2030017, 2004 WL 758394, at *1 (Ala.Civ.App.2004). Undaunted, Mr. Waite filed a second action in Alabama to again challenge the decree. The lower court again dismissed the action on Mrs. Waite's motion.

Although he has indicated that he will appeal if the trial court does not vacate its order, Mr. Waite has not demonstrated that his second action in any way affects the original decree of divorce or the dismissal of his collateral attack. *See id.; see also Alabama Power Co. v. Thompson*, 250 Ala. 7, 32 So.2d 795, 800 (1947) (noting that, under Alabama law, a judgment will operate as res judicata or as estoppel notwithstanding an appeal when the appellate court action is based on a review of the record made below).

age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution.

*Id.* at 205. Our own legislature has enacted these types of regulations. *See* TEX. FAM.CODE §§ 1.101–.108, 2.001–.012, 2.101–.103, 2.201–.209 & 2.501.

■ For many couples, the wedding ceremony is religious and their religious beliefs inform and mold the ceremony and their union; for other couples, presumably those having no strong religious bond, the wedding ceremony is completely unconnected with any religion or religious belief. Regardless of how the couple views their union—whether they see it primarily as religious or secular—the State governs all legal aspects of the union.[5]

"When the contracting parties have entered into the married state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest not upon their agreement, but upon the general law of the state, statutory or common, which defines and prescribes those rights, duties, and obligations. They are of law, not of contract. It was a contract that the relation should be established, but, being established, the power of the parties as to its extent or duration is at an end. Their rights under it are determined by the will of the sovereign, as evidenced by law. . . . It is not then a contract within the meaning of the clause of the constitution which prohibits the impairing the obligation of contracts. It is rather a social relation like that of parent and child, the obligations of which arise not from the consent of concurring minds, but are the creation of the law itself, a relation the most important, as affecting the happiness of individuals, the first step from barbarism to incipient civilization, the purest tie of social life, and the true basis of human progress."

*Maynard,* 125 U.S. at 211–12, 8 S.Ct. 723 (quoting *Adams v. Palmer,* 51 Me. 480, 483 (Me.1863)).

Our own legislature has empowered the family district court in this case to grant divorces and divide marital property. *See* TEX. GOV'T CODE §§ 24.001, 24.619; TEX. FAM.CODE §§ 6.001–.007. Thus, the court was authorized to hear this case and clothed with full authority to adjudicate the parties' rights. The court did not err in denying Mr. Waite's plea to the jurisdiction. We overrule Mr. Waite's thirteenth point of error.

## III. MRS. WAITE'S MOTION TO DISMISS BASED ON MR. WAITE'S ACCEPTANCE OF BENEFITS

### A. Mrs. Waite's Motion is Not Untimely

■■ We now turn to Mrs. Waite's motion to dismiss. But, before we reach its merits, Mr. Waite argues we cannot consider it because it was not filed timely under Texas Rule of Appellate Procedure 10.5(a). Rule 10 governs motions in the

---

5. For example, even if a couple chose to be married, but did not need or desire legal recognition of their marriage, the couple still would not be able to avoid entanglement with the law. *See* TEX. FAM.CODE §§ 2.401–.405. If one of the couple should die before the other, the law would prescribe how the remaining spouse would prove their marriage so the spouse could claim ownership of their property. *See id* § 2.401. If the couple had children and the father died, the law would govern how the children would prove heirship. Only if the couple chose to have no connection with society and achieved that goal, might they avoid the laws applied by the State.

appellate courts. Rule 10.5(a), entitled *"Motions Relating to Informalities in the Record,"* provides as follows:

A motion relating to informalities in the manner of bringing a case into court must be filed within 30 days after the record is filed in the court of appeals. The objection, if waivable, will otherwise be deemed waived.

TEX.R.APP. P. 10.5(a). As we discuss below, the acceptance of benefits doctrine is a substantive rule grounded in estoppel; it has nothing to do with informalities in an appellate record, which involve procedural defects in the form of the record. *See Bloom,* 935 S.W.2d at 946 (rejecting application of rule to acceptance of benefits motion); *Aycock v. Pannill,* 853 S.W.2d 161, 163–64 (Tex.App.-Eastland 1993, writ denied) (same). As a result, any timetable contained in Rule 10.5 does not apply to Mrs. Waite's motion to dismiss.

**B. The Acceptance of Benefits Doctrine**

■ We now turn to the substance of Mrs. Waite's motion to dismiss Mr. Waite's appeal based on the acceptance of benefits doctrine. Generally, under this doctrine, a party who accepts the benefits of a judgment is estopped from appealing that judgment. Mr. Waite does not dispute that he accepted benefits that were awarded to him in the divorce decree. Instead, he argues that the doctrine does not apply because he falls within the following two exceptions:

- His acceptance of the benefits was involuntary due to economic necessity; and
- A reversal of the judgment will not affect his rights to the benefits he has received.

For the reasons explained below, we hold that Mr. Waite does not satisfy either exception he raises.

**1. The Applicable Law**

■ As we noted earlier, generally, a party who accepts the benefits of a judgment is estopped from challenging the judgment by appeal. *See Texas State Bank v. Amaro,* 87 S.W.3d 538, 544 (Tex. 2002); *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950); *Kline v. O'Quinn,* 874 S.W.2d 776, 780 (Tex.App.-Houston [14th Dist.] 1994, writ denied). The Texas Supreme Court explained in *Carle v. Carle,* also a divorce case, "A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Carle,* 234 S.W.2d at 1004. This doctrine arises often in divorce cases when one spouse accepts certain benefits of the judgment and then tries to appeal the remainder of the judgment. *See, e.g., Bloom,* 935 S.W.2d at 946–48; *Blaylock v. Blaylock,* 603 S.W.2d 254, 255 (Tex.Civ. App.-Houston [14th Dist.] 1980, no writ); *Swearingen v. Swearingen,* 487 S.W.2d 784, 788 (Tex.Civ.App.-San Antonio 1972, writ dism'd); *Nixon v. Nixon,* 348 S.W.2d 438, 440–41 (Tex.Civ.App.-Houston [1st Dist.] 1961, writ dism'd). The burden is on the appellee to prove that the appellant is estopped by the acceptance of benefits doctrine. *See Gonzalez v. Gonzalez,* 614 S.W.2d 203, 204 (Tex.Civ.App.-Eastland 1981, writ dism'd).

■ There are, however, exceptions to the acceptance of benefits doctrine. For example, one exception is based on economic necessity, and it applies when the acceptance of benefits is not voluntary because of financial duress or other economic circumstances. *See McAlister v. McAlister,* 75 S.W.3d 481, 483 (Tex.App.-San Antonio 2002, pet. denied); *Cooper v. Bushong,* 10 S.W.3d 20, 23 (Tex.App.-Austin 1999, pet. denied); *Gonzalez,* 614

S.W.2d at 204. Another exception applies when a reversal of the judgment could not possibly affect an appellant's right to the benefit accepted. *See Amaro,* 87 S.W.3d at 544; *Carle,* 234 S.W.2d at 1004; *Blaylock,* 603 S.W.2d at 255. Stated another way, when the appellant accepts only that part of the judgment that the appellee concedes is due to the appellant, the appellant is not estopped from appealing. *Carle,* 234 S.W.2d at 1004; *Bloom,* 935 S.W.2d at 944. These exceptions are narrow. *See Carle,* 234 S.W.2d at 1004; *Kline,* 874 S.W.2d at 780.

## 2. Mr. Waite's Actions that Invoke the Acceptance of Benefits Doctrine

■ Mrs. Waite points to three specific actions she contends constitute Mr. Waite's voluntary acceptance of the benefits of the judgment. First, immediately after the judgment was entered, Mr. Waite demanded his entire share of the Dean Witter community funds, totaling $862,997.27. Second, Mr. Waite asserted his right to sole ownership of the family residence, worth more than $300,000 at the time of trial. In connection with this, he demanded that Mrs. Waite execute a warranty deed transferring all her ownership interest in the property to him, and he filed the deed with the county clerk. Third, Mr. Waite accepted the benefit of a $5,705 federal income tax refund issued on the parties' joint tax return, requiring Mrs. Waite to endorse it over to him. In each instance, Mrs. Waite argues, Mr. Waite has affirmatively relied on the validity of the judgment in asserting his rights

against her, and therefore he is estopped to challenge it.

The evidence confirms that Mr. Waite took the actions of which Mrs. Waite complains. Therefore, unless Mr. Waite satisfies an exception to the acceptance of benefits doctrine or otherwise shows that it does not apply, we must agree with Mrs. Waite that Mr. Waite's actions in accepting a substantial portion of the judgment bars him from appealing that same judgment he now attacks.

## 3. Mr. Waite Claims He Falls Within One of Two Exceptions to the Acceptance of Benefits Doctrine

Mr. Waite does not deny he accepted these benefits. However, he contends that the acceptance of benefits doctrine does not bar his appeal because (1) he accepted the benefits out of economic necessity; and (2) a reversal of the judgment will not affect his rights to the benefits he has received. We address each argument in turn.

### a. The evidence does not show that economic necessity compelled Mr. Waite to accept the benefits.

■ Mr. Waite first argues that he accepted the identified benefits of the judgment out of economic necessity. In support of this, Mr. Waite relies upon (i) his affidavit, and (ii) an argument that this exception should be liberally applied.[6] We disagree that Mr. Waite's affidavit evidences economic necessity, and we find the authorities he cites in support of his argu-

---

6. Mr. Waite also argues the trial court had to disburse the cash that was in the court registry or else it would be required to monitor the parties' finances throughout the appeal and after its plenary power had expired. In making this argument, Mr. Waite distinguishes this case from one in which the appellant recovers funds from an opposing party pursuant to a judgment. However, Mr. Waite cites no authority for making an exception to the acceptance of benefits doctrine because the funds were in the court registry rather than under the control of the parties. Indeed, at least one court determined that a party to a divorce was estopped to appeal after moving the trial court to order the payment of funds from the court registry. *See Nixon,* 348 S.W.2d at 440–41.

ment for a liberal application of the economic necessity exception distinguishable on these facts.

### (i) *Mr. Waite's affidavit*

In his affidavit in support of his economic necessity argument, Mr. Waite states that he needed the money he received from the court's registry

- to pay his daily living expenses and the costs of his appeal, and
- to complete repairs on the family home awarded to him as his separate property.[7]

He also states that the tax refund involved the return of money he advanced as the result of an accounting error by his CPA, and so he received no benefit from its return. Finally, he states that he has not sold or refinanced the house, or taken a loan against it.

Mr. Waite argues that his affidavit unequivocally establishes the economic circumstances rendering his acceptance of the benefits of the judgment involuntary. We disagree. The affidavit is largely conclusory; it contains almost no factual support for Mr. Waite's assertion of economic necessity.

For example, Mr. Waite offers few specifics to support his initial contention that he needed the entire award of over $800,000 to pay his daily living expenses. He states generally that he had to pay for such things as food, clothing, rent, and insurance, but does not specify how much these items cost or list specific bills. Mr. Waite also states that he had to pay various expenses related to his appeal, but lists only a specific amount for past due attorney's fees of $144,000.[8] Similarly, he states in conclusory fashion that he needed the money to complete repairs to the house he was awarded and to "pursue [his] employment as a remodeler." But, he does not identify any costs associated with these enterprises, nor does he aver that the repairs to the house were necessary or that he risked economic hardship if the money was not made available to him for these purposes.

Mr. Waite's claim of financial hardship is further undercut by the complete absence of any statement in his affidavit that he

---

7. The substantive portion of Mr. Waite's affidavit consists of the following:

"I have reviewed the Appellee's Motion To Dismiss filed in this case. The funds I received from the registry of the Court pursuant to the final judgment were needed by me to pay my daily living expenses, including, but not limited to, food, utilities, clothing, rent, taxes, gasoline, auto and homeowners insurance, health insurance and other miscellaneous day to day living expenses. In addition, I needed the funds to pay the costs of my appeal including attorney's fees, court courts [sic], and the appeal bond, including the supercedeas bond. I have posted a supercedeas bond in the amount of $440,000.00 (nearly half the amount received). Without the use of these funds, I could not have paid all of the financial obligations set forth above and I could not have posted my supercedeas bond. I paid $144,000.00 for past due attorney's fees and appellant [sic] attorney's fees which were due and owing which I could not previously pay due to the restrictive orders of the Court. I also needed the funds to effectuate and complete repairs on the house and to pursue my employment as a remodeler. For these reasons the use of the funds I received from the registry of the Court was not voluntary.

In addition, the funds I received from the IRS as set fort in Appellee's Motion To Dismiss were due to any [sic] accounting error by my CPA. I advanced the money that was returned. I received no 'benefit' from this return of funds.

Finally, I have not sold or refinanced the subject property, nor have I taken a loan against it."

8. Although Mr. Waite states that he posted a bond for his appeal in the amount of $440,000, he does not state whether he put up the full amount in cash or only paid a percentage of it.

was unemployed or had no other sources of income. Mrs. Waite points out that the trial court found that Mr. Waite had substantial earning capacity and employment opportunities. The court's finding was expressly based on two facts: (1) Mr. Waite's work experience as a broker for Dean Witter Reynolds, for which he earned a yearly salary in excess of $200,000 per year; and (2) Mr. Waite's service on the board of directors for the Harvest Foundation, for which he "receives substantial compensation." The trial court also found that "Mr. Waite has received income from a charitable fund, known as the Harvest Foundation, during the life of this litigation, and he is entitled to continue receiving substantial income from the Harvest Foundation." Mr. Waite complains that these fact findings relate to irrelevant past circumstances. We disagree with this characterization. We also note that Mr. Waite does not deny the statements or direct us to any controverting evidence in the record.[9]

Mr. Waite's affidavit also contains no assertions of economic necessity requiring him to accept the benefit of the judgment awarding him the tax refund. Merely because the tax refund reimbursed him for an earlier advance of funds does not make its return an economic necessity.

Similarly, Mr. Waite identifies no economic necessity requiring him to demand that Mrs. Waite execute a warranty deed transferring the house to him. And Mr. Waite's assertion that he has not sold, refinanced, or taken a loan against the house cuts against his economic necessity argument, because if Mr. Waite was truly suffering financial duress he would do—or at least consider doing—one of these things.[10]

For these reasons, we conclude Mr. Waite's affidavit does not prove that he accepted the benefits because of economic necessity.

### (ii) *Mr. Waite's argument against strict application of the exception*

Although we have already concluded that Mr. Waite did not accept the benefits because of economic necessity, we briefly want to respond to Mr. Waite's emphatic claim that he does not deserve such a result and that, in any event, the doctrine should not be strictly applied.

■ First, the cases Mr. Waite primarily relies on to argue that the doctrine should not be strictly applied—*Haggard v. Haggard* and *Trevino v. Trevino*—are distinguishable from this case. *See Trevino v. Trevino*, 555 S.W.2d 792 (Tex.Civ.App.-Corpus Christi 1977, no writ); *Haggard v. Haggard*, 550 S.W.2d 374 (Tex.Civ.App.-Dallas 1977, no writ). In *Haggard*, the former wife accepted four $100 checks, and in *Trevino*, the former wife accepted $5,000, which was only part of the amount awarded to her. *See Trevino*, 555 S.W.2d at 795; *Haggard*, 550 S.W.2d at 376. Here, Mr. Waite did not accept the rela-

9. In his Appellant's Brief, Mr. Waite does not challenge the legal and factual sufficiency of these findings of fact. In his reply brief, Mr. Waite complains about Mrs. Waite's characterization of the record and states generally that he "challenges" numerous findings of fact, including these two, but does not individually address them or cite to any contrary evidence in the record.

10. We find Mr. Waite's affidavit to be in stark contrast to that in *Gonzalez v. Gonzalez*, in which the court found that the former wife supported her claim of financial duress with an affidavit in which she stated that she was destitute and had no income, had lost her job, had to sell her car for a specified amount, used her property as collateral to borrow money, and provided a detailed list of the amounts of her debts and expenses. *See Gonzalez*, 614 S.W.2d at 204 n. 1.

tive equal of four $100 checks or $5,000.[11] Mr. Waite took close to one hundred percent of the total community property he was awarded and all of the community cash he was awarded.[12] We have not found a case like this in which a court has refused to apply the doctrine, and he has cited none.

Second, although we mentioned this earlier, it bears repeating. Mr. Waite's affidavit is bereft of details. An individual who truly needs an award of money can obtain it and still appeal simply by filing a comprehensive affidavit.[13]

### b. A reversal may affect Mr. Waite's rights to the benefits he accepted

■■■ Mr. Waite also contends he falls within the second exception to the acceptance of benefits doctrine. That exception applies when a reversal of the judgment being appealed could not possibly affect an appellant's right to the benefits already accepted. *See Carle*, 234 S.W.2d at 1004. In essence, Mr. Waite argues that he received such a paltry portion of the estate that he could not possibly be awarded less than he has already received. As a result, the argument continues, his rights to the benefits he has already accepted will not be affected. Again, we disagree.

#### (i) *The exception is narrow*

■■■ This exception was discussed extensively in *Carle v. Carle*, 234 S.W.2d at

1004. The Texas Supreme Court explained that a party who accepts benefits that are undeniably his—so much that the opposing party would concede upon another trial that the benefits are his—does not waive the right to appeal. The doctrine also would not apply if, for some other reason, the appellant's rights in the awarded property could not be affected on retrial. As the *Carle* court noted, this exception is applied stingily.

> The exception is narrow. Whether or not this case falls within it must be determined from answers to these questions: Could a reversal of the portions of the judgment referred to in these two certified questions possibly affect appellant's right to the benefits secured by him under the judgment? And would appellee be compelled to concede upon another trial that appellant has the right to retain those benefits regardless of the outcome of the litigation?

*Id.* In other words, the exception does not tolerate chance or uncertainty. The appellant's right to the property must be unquestionable.

#### (ii) *Mr. Waite's case does not fit within the very narrow exception*

With this framework in mind, we turn to Mr. Waite's claim. It is, simply, this. The cash in the registry of the court was not community property, but separate proper-

---

11. The other divorce cases he cited were similarly distinguishable. *See Harris v. Holland*, 867 S.W.2d 86, 87 n. 1 (Tex.App.-Texarkana 1993, no writ) (holding appellant not estopped when at least some of cash was accepted because of economic necessity and a redivision of the property would not affect her right to the cash received); *Gonzalez*, 614 S.W.2d at 204 (holding appellant not estopped when affidavit disclosed acceptance of benefits was involuntary due to financial duress).

12. The money the court awarded Mr. Waite constituted 90% of the estate.

13. Mr. Waite also could have left the money in the registry of the court and obtained money during the appeal by requesting temporary support payments. *See* TEX. FAM.CODE § 6.709; *McAlister*, 75 S.W.3d at 483 (noting that accepting payments under temporary support orders does not constitute acceptance of benefits).

ty. Thus, if we were to hold that the property was his separate property, he would keep all the cash already awarded to him and it is "inconceivable" that he would be awarded less than the "paltry percentages" he has already received.[14] The record does not substantiate Mr. Waite's claims.

If we were to reverse because the trial court erred in characterizing the cash as community, the trial court would almost certainly re-divide the community property. Mr. Waite fails to recognize that the court divided the community property unevenly in part because of Mr. Waite's abusive behavior toward Mrs. Waite during their marriage. Having made a just and right division based on the cash being community, the trial court would have to re-divide the assets to reach a new "just and right" division of the community estate. *See* TEX. FAM.CODE § 7.001. If we reversed, we find it highly unlikely on the record before us that Mr. Waite would keep all of the property he was awarded. In the words of another appellate court, "While [Mr. Waite] might receive more, [h]e might also receive less." *See Bloom,* 935 S.W.2d at 948.

In addition, if we were to hold that the cash was Mr. Waite's separate property and reverse the case, the chances are almost certain that Mrs. Waite would dispute his right to all the funds. In the trial court, Mrs. Waite had pleaded alternatively that the funds be declared community or that, in the event they were declared

separate, she recover a portion of the funds as gifts or reimbursement. *See Carle,* 234 S.W.2d at 1004.

Thus, Mrs. Waite is not conceding an inch and, on remand, we think it highly probable that the court would redivide the estates. These facts do not qualify for the narrow exception.[15]

## IV. CONCLUSION

In summary, we overrule Mr. Waite's contention that the trial court's exercise of jurisdiction over the divorce violated his constitutional guarantees of religious freedom. Mrs. Waite's motion to dismiss is not untimely because Texas Rule of Appellate Procedure 10.5(a) is a procedural rule that does not apply to a motion to dismiss on the basis of the acceptance of benefits doctrine. We grant Mrs. Waite's motion to dismiss the appeal on the basis of the acceptance of benefits doctrine because Mr. Waite accepted substantial benefits of the judgment he now seeks to attack. Also, the evidence does not show that Mr. Waite falls within the economic necessity exception to the acceptance of benefits doctrine, or that a reversal of the judgment would not affect his rights to the property.

We dismiss the appeal.

---

14. Mr. Waite contends he received only 13% of the community estate, while Mrs. Waite contends he received approximately 45%.

15. Mr. Waite relied primarily on *Kline v. O'Quinn* to argue that he fits within the second exception. That case contains a completely different set of facts than we have here. *See Kline,* 874 S.W.2d at 781. There, O'Quinn moved to dismiss Kline's appeal because Kline accepted compensatory damages that O'Quinn paid under the judgment. However, Kline did not appeal the award of compensatory damages; she appealed only the punitive damages and attorney's fees the trial court deleted from an arbitration award. A reversal on appeal would not change the compensatory damages already awarded; it would only add the punitive damages or attorney's fees or both. *See id.*