**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed October 8, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00593-CV

---

### BARBARA WHITE, Appellant

### V.

### JAMES N. WHITE, JR. AND AUDREY R. GORHAM, Appellees

---

### On Appeal from the 311th District Court
### Harris County, Texas
### Trial Court Cause No. 2012-65951

---

## M E M O R A N D U M   O P I N I O N

Barbara White appeals from a final divorce decree and qualified domestic relations order. In eight issues, Barbara challenges the trial court's division of marital property and the trial court's denial of Barbara's request to reinstate her maiden name. We overrule all issues involving the division of the marital estate due to Barbara's acceptance of benefits under the divorce decree, and we reverse and remand to the trial court on the issue of Barbara's requested name change.

BACKGROUND

Barbara White and James N. White, Jr. were married on January 11, 1995. Barbara filed for divorce in November 2012. James filed a counter-petition for divorce. The case was tried to the court in March 2014, and the trial court signed a Final Decree of Divorce and a Qualified Domestic Relations Order (QDRO) on April 22, 2014.

Much of the appellate battle centers on the trial court's marital property characterization of James's retirement benefits. James began working for the fire department in 1967 and began contributing to the Houston Firefighter's Relief and Retirement Fund in March 1968. James ceased regular employment in March 1998 — three years into his marriage with Barbara, and after thirty years of employment — and began participating in the Houston Firefighter's Relief and Retirement Fund DROP program.[1] James worked for the fire department for ten more years until he retired in March 2008. James's DROP account contained approximately $640,000 when James and Barbara divorced in 2014; the trial court determined that approximately $590,000 of this amount is James's separate property and divided the remaining community property portion equally between the parties. At the time of the divorce, James also was receiving a monthly retirement payment of approximately $8,700; the trial court ordered that Barbara receive $962.99 per month as her one-half community property share.

In eight issues, Barbara contends that the trial court abused its discretion by: (1) failing to apportion James's retirement benefits properly; (2) failing to divide

---

[1] The DROP program is an optional method to receive benefits available to firefighters with 20 or more years of credited pension service. This program allows an individual to continue working and receiving a salary for up to ten years; the monthly retirement annuity the individual could have received during that period is credited to an account in the individual's name where it earns interest at a guaranteed annual rate.

the community property interest in the cost-of-living adjustment to James's retirement benefits in the final decree; (3) failing to modify the final decree or grant a new trial to correct the trial court's failure to divide the cost-of-living adjustment; (4) entering a post-trial QDRO implicitly granting to James the entirety of the post-divorce cost-of-living adjustments despite the absence of an award to that effect; (5) failing to restore Barbara's maiden name or state the reason for denying the request in the final decree; (6) failing to modify the final decree to restore Barbara's maiden name; (7) failing to divide a material asset of the parties in the final decree, specifically, a house in Sargent, Texas; and (8) awarding the marital property in a manner that was manifestly unjust and unfair to Barbara.

James filed a motion to dismiss this appeal contending that Barbara voluntarily accepted benefits under the judgment of divorce and therefore is estopped to challenge the judgment on appeal. We carried the motion with the appeal and now address all of the matters presented. We initially discuss the motion to dismiss because it is dispositive on a majority of Barbara's issues.

ANALYSIS

## I.      Motion to Dismiss

Generally, a party who accepts benefits under a judgment is estopped to challenge the judgment on appeal. *See Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002); *Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). This acceptance of benefits doctrine arises often in divorce cases when one spouse accepts certain benefits of the judgment and then tries to appeal the remainder of the judgment. *Waite*, 150 S.W.3d at 803.

3

James, as the movant and appellee in this case, bears the burden of proof to establish the applicability of the acceptance of benefits doctrine. *See Leedy v. Leedy*, 399 S.W.3d 335, 339 (Tex. App.—Houston [14th Dist.] 2013, no pet.). If James establishes that Barbara accepted benefits of the judgment, then the burden shifts to Barbara to demonstrate that an exception to the doctrine applies. *See id.*

Several exceptions to the acceptance of benefits doctrine have been identified. First, the doctrine does not apply if the benefits were accepted due to economic necessity. *See Waite*, 150 S.W.3d at 803. Second, the doctrine does not apply if reversal of the judgment could not possibly affect the appellant's right to the benefits accepted, or, stated differently, if the appellant accepts only that part of the judgment that the appellee concedes is due to the appellant. *Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950); *see also Waite*, 150 S.W.3d at 804. Finally, the doctrine does not apply if the benefit accepted was cash, the use of which would not prejudice the appellee. *Sprague v. Sprague*, 363 S.W.3d 788, 793 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

In his motion to dismiss and supporting affidavit, James contends that Barbara was awarded and has accepted the following benefits under the divorce decree: (1) $24,914.05 from James's DROP account, which was one-half of the portion of the account determined by the trial court to be community property; (2) $962.99 per month as Barbara's one-half community property share of James's monthly retirement benefit; (3) $14,784.50 from the parties' mutual fund account (one-half of the total account value); (4) approximately $300 from various bank accounts; (5) two moped mini-bikes; (6) a motorcycle; and (7) a 2001 Buick Century automobile.

4

With several exceptions noted below, Barbara generally admits that she has accepted benefits under the divorce decree. She contends that all three exceptions to the doctrine apply to prevent estoppel of her claims on appeal.

## A.     Economic Necessity

The economic necessity exception applies when the acceptance of benefits was not voluntary but was necessary because of financial distress or other circumstances. *Argovitz v. Argovitz*, No. 14-04-00885-CV, 2005 WL 2739152, at *4 (Tex. App.—Houston [14th Dist.] Oct. 25, 2005, no pet.) (mem. op.); *Waite*, 150 S.W.3d at 803. Barbara contends that she accepted benefits under the decree due to severe economic necessity because her alleged expenses greatly exceed her disability and retirement income.

While Barbara provides a supporting affidavit with her response to the motion to dismiss that identifies her monthly expenses, she provides no other supporting documentation to substantiate those expenses. For example, Barbara contends in her affidavit that her monthly utility expenses are $748; her affidavit does not include a reference to any bills or otherwise explain why her monthly utility expenses have increased from the $330 she initially identified to the trial court. James contends, and we agree, that Barbara's affidavit is conclusory and therefore insufficient to establish economic necessity. *See, e.g.*, *Waite*, 150 S.W.3d at 805-06 (affidavit stating generally that benefit recipient had to pay for food, clothing, rent, insurance, and $144,000 of past-due attorney's fees was conclusory and insufficient to establish economic necessity in part because it did not list specific bills); *see also In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (conclusory affidavit "fail[ed] to establish any basis for the affiant's knowledge of corporate structure or attach any supporting documents whatsoever").

5

Barbara also contends in her affidavit that she has not accepted the two moped mini-bikes and the motorcycle. She asserts that James "dumped the mini-bikes and the motorcycle outside [her] house after the Divorce Decree was signed" without her consent or request. However, the affidavit does not address the Buick. Even assuming that Barbara has not accepted the moped mini-bikes or the motorcycle, and even assuming that Barbara accepted the DROP funds,[2] monthly retirement benefit, and other funds[3] due to economic necessity, Barbara makes no argument of economic necessity regarding the Buick automobile. Barbara has therefore accepted at least one unexplained non-cash benefit, which prevents application of the economic necessity exception. *See Argovitz*, 2005 WL 2739152, at *4 (economic necessity argument failed in part because no economic necessity argument was advanced regarding appellant's acceptance of real property, corporate stock, frequent flyer miles, or automobile); *Waite*, 150 S.W.3d at 805-06 (exception did not apply where appellant's affidavit failed to identify any economic necessity requiring transfer of real property to appellant).

Barbara does not contend that she lacks ability to borrow money to meet her expenses or that she could not have obtained money during the pendency of the appeal by requesting temporary support payments.[4] *See Argovitz*, 2005 WL 2739152, at *4 ("We additionally note that Paddy does not contend that she has no other sources of income or that she has no ability to borrow money to meet her expenses; likewise, she fails to explain why she could not have obtained money

[2] Barbara admits to accepting her awarded portion of James's DROP account but contends that she "rolled over the DROP payment into a retirement account, because [she] cannot afford to pay taxes on a distribution of the funds." No argument is made that moving the DROP funds into a separate retirement account was the result of economic necessity.

[3] Barbara contends that she has withdrawn $2,500 of the $14,784.50 awarded to her from the parties' mutual fund and has left the remainder undisturbed.

[4] While the appellate record contains a motion for temporary orders pending appeal, there is no indication that the motion was set for a hearing or ruled upon by the trial court.

during the pendency of the appeal by requesting temporary support payments."); *Waite*, 150 S.W.3d at 806 (if appellant were suffering financial duress, he would have sold, refinanced, or taken a loan against his home, or at least considered doing so).[5]

Based on the foregoing, we conclude that Barbara has failed to establish that she accepted benefits of the judgment due to economic necessity.

### B.     Entitlement

An appellant is not estopped by the acceptance of benefits doctrine when the reversal of a judgment cannot possibly affect the appellant's right to the benefit secured under that judgment. *See Carle*, 234 S.W.2d at 1004. In other words, an appellant may accept benefits when the appellee concedes, or is bound to concede, that they are due to the appellant. *See id.*; *Leedy*, 399 S.W.3d at 341. This exception is narrow, and the appellant's right to the benefits accepted must be unquestionable. *Carle*, 234 S.W.2d at 1004; *Leedy*, 399 S.W.3d at 341; *Waite*, 150 S.W.3d at 807 ("the exception does not tolerate chance or uncertainty").

Barbara contends that she has accepted only benefits to which James, in his sworn inventory filed with the trial court, has conceded she is entitled. For example, Barbara asserts that "[t]he retirement account benefits accepted were the exact amounts [James] and his expert asked the court to award her," and that the cash and other assets awarded her represented her share of the community estate, as acknowledged by James's sworn inventory. Barbara argues that the "trial court could re-divide the marital estate to award [her] a fair and equitable share without divesting [her] of the benefits she has received to date." This argument misses the mark and misconstrues the exception.

---

[5] Barbara has a house in Houston which was confirmed in the final decree of divorce to be her separate property.

The exception identified by *Carle* does not focus on whether the trial court could award additional assets to the appellant on remand without divesting assets previously awarded. Rather, the exception applies only if the appellant could not possibly be divested on remand of those assets already awarded. *See Carle*, 234 S.W.2d at 1004; *Waite*, 150 S.W.3d at 807 ("The Texas Supreme Court explained that a party who accepts benefits that are undeniably his—so much that the opposing party would concede upon another trial that the benefits are his—does not waive the right to appeal.").

Neither James's sworn inventory filed with the trial court nor the testimony of James's expert establish that Barbara is entitled to the assets awarded her. At most, the inventory and testimony might operate as a concession regarding the community property classification of certain assets.[6] However, any such concession would not prevent James from arguing on remand that Barbara should receive a smaller share of those community assets than she was awarded previously. *See Leedy*, 399 S.W.3d at 341 (when parties to divorce stipulated to the value of wife's interest in business, this court noted that, "if there were a remand in this case, Brad would not be limited to seeking enforcement of the Rule 11 Agreement or required to concede that Kedren was entitled to at least $125,000 for her interest in Texcalibur," and that, "[i]n a hypothetical remand, she might recover more; she might recover less"); *Argovitz*, 2005 WL 2739152, at *3 ("It is extremely unlikely that Jerry would concede, or would be required to concede, Paddy's entitlement to any of the items she has accepted under the original

---

[6] Even this assumption is questionable. *See, e.g.*, *Reynolds v. Reynolds*, No. 14-09-00720-CV, 2010 WL 3418209, at *2-3 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, pet. denied) (mem. op.) (rejecting wife's argument that husband conceded her entitlement to certain funds when he signed divorce decree containing language that "the parties stipulate the [decree] is enforceable as a contract," because wife did not sign decree and it was therefore not enforceable as a marital property agreement signed by both parties).

8

judgment. Indeed, Paddy offers no reason why Jerry could not request, and the trial court could not award to him, the real property, the stock, the frequent flyer miles, and the vehicle.") (citation omitted). Accordingly, Barbara has not demonstrated that reversal of the judgment could not possibly affect her right to the benefits accepted.

### C. Cash Benefits

An appellant who has accepted a benefit under a judgment is not estopped from appealing the judgment if the benefit was cash, the use of which would not prejudice the appellee. *Sprague*, 363 S.W.3d at 793. This exception is limited to cases in which the cash benefits accepted were relatively small in comparison with the total value of the community property because the trial court readily can take the amounts into account on remand. *See Leedy*, 399 S.W.3d at 342.

Barbara argues that the only benefits she accepted were cash benefits. As previously noted, however, Barbara also was awarded other non-cash benefits, including the Buick. Barbara's acceptance of these non-cash benefits is not disputed. *See Argovitz*, 2005 WL 2739152, at *3 (cash benefit exception did not apply when non-cash benefits were accepted); *see also Kastleman v. Kastleman*, No. 03-13-00133-CV, 2014 WL 3809759, at *3 (Tex. App.—Austin July 30, 2014, pet. pending) ("Lisa's argument does not address the fact that she did not accept only cash benefits but also accepted real property and other unspecified assets as stated in the court's unchallenged finding. We therefore conclude that Lisa has not met her burden of establishing that the cash benefits exception applies.").

Even disregarding the acceptance of non-cash benefits, Barbara has taken control of essentially the entire cash amount awarded to her; this constitutes

approximately half of the community estate funds.[7]  Barbara admits that she has spent some of those funds; there is no documentation in the record to establish that she has not spent all of them.  Accordingly, we cannot say that James would not be prejudiced on remand if the trial court were to redistribute the marital estate in his favor.  *See Waite*, 150 S.W.3d at 806-07 (refusing to apply cash benefits exception where husband "took close to one hundred percent of the total community property he was awarded and all of the community cash he was awarded"); *Warren v. Warren*, No. 2-02-408-CV, 2003 WL 22351806, at *2 (Tex. App.—Fort Worth Oct. 16, 2003, pet. denied) (mem. op.) ("The record shows that the majority of Terry's half of the proceeds has been used to pay credit card debt, and there is no evidence showing that Terry has the ability to reimburse the community estate in the event the trial court redistributes the estate on remand in a manner more favorable to Brenda.").  Therefore, we conclude that the cash benefits exception does not apply.

### D.    Conclusion

Because Barbara has not shown that her appeal of the trial court's division of the marital estate falls within an exception to the acceptance of benefits estoppel doctrine, we overrule all of Barbara's challenges involving the division of marital property.[8]  However, we reject James's motion to dismiss the appeal in its entirety because Barbara's issues concerning the trial court's alleged failure to reinstate her maiden name do not involve the division of property and are therefore severable

---

[7] Barbara refused to cash a check from James in the amount of $2,082.99, which represented her one-half community property interest in certain bank accounts.

[8] Specifically, we dismiss Barbara's issues 1–4 and 7–8.  Regarding Barbara's seventh issue in which she contends that the trial court failed to divide a house in Sargent, Texas, the final decree specifically orders the property sold and any profit split evenly between the parties.  The decree states that, if the home is sold for a loss, the remaining debt shall be paid entirely by James.  Accordingly, the trial court did not fail to divide the house in Sargent, and Barbara's seventh issue is essentially a challenge to the trial court's division of assets.

and may be properly considered in this appeal. *See Tomsu v. Tomsu*, 381 S.W.3d 715, 717 (Tex. App.—Beaumont 2012, no pet.) (spousal maintenance and trial court's award of appellate fees were issues not involving the division of the marital estate and survived motion to dismiss); *Reynolds v. Reynolds*, No. 14-09-00720-CV, 2010 WL 3418209, at \*3 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, pet. denied) (mem. op.) ("We do not grant David's motion to dismiss Wilma's entire appeal, however, because the estoppel arguments apply only to Wilma's challenges to the divorce decree, not to her appeal of the trial court's order sanctioning her and preventing her from discovering David's QIP 2008 income.").

## II. Restoration of Maiden Name

In her fifth and sixth issues, Barbara contends that the trial court abused its discretion by failing to (1) restore Barbara's maiden name or state the reason for denying the request in the final decree; and (2) modify the final decree to restore Barbara's maiden name after the alleged error was raised in Barbara's Motion for New Trial, Motion for Clarification and Motion to Modify Decree of Divorce.

Section 6.706(a) of the Texas Family Code provides that, "[i]n a decree of divorce or annulment, the court shall change the name of a party specifically requesting the change to a name previously used by the party unless the court states in the decree a reason for denying the change of name." Tex. Fam. Code Ann. § 6.706(a) (Vernon 2006). Barbara's original petition for divorce asked the trial court to restore her maiden name. The final decree of divorce neither restored Barbara's maiden name nor stated a reason for denying the requested name change. Barbara likewise asked the trial court to modify its final decree. The trial court refused without explanation to do so and stated: "With regards to the request for your name change, your motion has been denied."

11

The statute mandates that the court "shall" change the name of the party unless the court states a reason for denying the requested name change in the decree. *See id.* Accordingly, we reverse the portion of the final decree of divorce that denies Barbara's request to reinstate her maiden name, and remand to the trial court to either grant the requested name change or to state a reason in the decree for not doing so.

## CONCLUSION

Because Barbara accepted the benefits of the trial court's division of the marital estate, she is estopped from challenging that division on appeal. We therefore overrule Barbara's issues challenging the characterization and division of the marital property. We reverse the portion of the final divorce decree denying without explanation Barbara's request for a name change, and remand to the trial court to either grant the requested name change or state a reason in the decree for not doing so.[9] We affirm the remainder of the trial court's final divorce decree and QDRO.

/s/     William J. Boyce
        Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

---

[9] In light of the resolution of this case, James's motion to dismiss the appeal in its entirety is denied.

12