Suzanne Marie TREVINO,
Appellant/Cross Appellee,

v.

Jorge H. TREVINO, Appellee/Cross
Appellant.

No. 1175.

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 31, 1977.

Orrin W. Johnson, Johnson & Davis, Harlingen, for appellant.

John E. Lewis, Adams, Graham, Lewis, Jenkins, Jones & Graham, McAllen, for appellee.

## OPINION

YOUNG, Justice.

This is an appeal from a judgment granting a divorce and dividing property. Suzanne and Dr. Jorge Trevino were married on June 23, 1973; the final judgment granting the divorce and dividing their property was entered on May 28, 1976. Both parties filed motions for new trial which were overruled by the trial court on August 30, 1976.

Trial was to a jury which found that the marriage had become insupportable and that the Doctor had been guilty of cruel treatment toward Suzanne. The jury also made fact findings as to values of community property and improvements and that Suzanne should recover $5,700.00 in attorney's fees from the Doctor. The jury further found that the community estate should be divided equally, one-half to each spouse. In accordance with those findings the trial court granted a divorce to the Doctor and ordered the property divided.

Both Suzanne, by sixteen points of error, and the Doctor, by four cross points, complain on appeal primarily about the classifications and the valuations assigned to the property as provided in the trial court's judgment. So both parties appeal. We affirm.

In our consideration of this appeal, we are first confronted with the resolution of the Doctor's motion to dismiss Suzanne's appeal. The motion was filed on March 10, 1977, the same day of but prior to oral submission of this case. The statement of facts and transcript had been filed on November 12, 1976, and December 28, 1976,

respectively. The substance of the motion is that Suzanne is estopped to attack the judgment of the trial court because she accepted a $5,000.00 payment under the judgment. For support the Doctor relies on *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002 (1950); *Trader v. Trader,* 531 S.W.2d 189 (Tex.Civ.App.—San Antonio 1975, writ dism'd); *Lipshy v. Lipshy,* 525 S.W.2d 222 (Tex.Civ.App.—Dallas 1975, writ dism'd).

■ But the Doctor as a result of his delay in filing this motion has waived his right to assert dismissal on the above stated grounds. Rule 404, T.R.C.P., requires that all motions relating to the informalities of bringing appeals must be filed within thirty days after the filing of the transcript or the objection is waived. The Doctor's delay, therefore, clearly resulted in a waiver of any rights to dismissal that might have existed. *Seber v. Glass,* 258 S.W.2d 122 (Tex.Civ.App.—Fort Worth 1953, no writ); *DeLange v. Ogden,* 106 S.W.2d 385 (Tex. Civ.App.—San Antonio 1937, writ dism'd).

■ Further, we find that this case meets the exception to the rule of law that a litigant cannot treat a judgment as both right and wrong by voluntarily accepting benefits and prosecuting an appeal therefrom. *Carle v. Carle,* supra. In *Haggard v. Haggard,* 550 S.W.2d 374 (Tex.Civ.App.— Dallas 1977, no writ) that exception is stated as follows:

" . . . We are of the opinion that a spouse should not be estopped from appealing an award pursuant to a divorce unless the other spouse would be prejudiced by the appeal to the extent that the wrong could not be remedied upon retrial, or unless the appealing spouse has clearly acquiesced in the judgment. . . ."

In *Haggard,* the Court went on to note that mere possession of a portion of the community estate awarded does not conclusively establish acquiescence to a judgment. Furthermore acceptance of payment could be based on financial need and thus not make a case for voluntary acceptance as required by the doctrine of estoppel. It was also there reasoned that the acceptance of cash

benefits under a judgment do not necessarily prejudice the rights of the other spouse. The Court pointed out that upon redivision of property, if necessary, that the money awarded could be taken into consideration and if there were an insufficient cash award to repay the money accepted, the assets awarded the spouse could be ordered sold to meet the debt.

Suzanne's acceptance of the $5,000.00 awarded was based upon financial need. Further, it is a cash award only and on final distribution of the property Suzanne will have sufficient assets to cover the award. The Doctor's motion to dismiss is overruled. *Cherokee Nation v. United States*, 355 F.2d 945, 174 Ct.Cl. 131 (U.S.Ct.Cl.1966); *Haggard v. Haggard*, supra; *McCartney v. Mead*, 541 S.W.2d 202 (Tex.Civ.App.—Houston [1st Dist] 1976, no writ).

The first group of points presented in this appeal (Suzanne's points 1, 2, 3, 4 and 5 together with the Doctor's point 1) deal with the value given to the professional association stock owned by the parties. The jury determined the value to be $3,500.00. The trial court pursuant to this value and to the court's recited scheme of equal division of the community property awarded the stock to the Doctor and an offsetting cash award of $1,750.00 to Suzanne.

The Doctor as cross appellant challenges this action of the trial court by asserting that the stock was the Doctor's separate property. We do not agree.

■■■ It is the general rule that all property on hand when the marriage is dissolved is presumed to be community property. Tex.Family Code Ann. § 5.02. To overcome this presumption the party claiming the property as his or her separate property must show by clear and satisfactory evidence that it is his or her separate property. *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.Sup. 1965); *In Re Marriage of Greer*, 483 S.W.2d 490 (Tex.Civ.App.—Amarillo 1972, writ dism'd). We feel that the evidence as presented does not overcome this presumption.

The professional association in question was formed in August and September of 1974 (during the marriage) pursuant to the instructions of Robert Chaffin, a Houston attorney retained to form the corporation. Mr. Chaffin on August 26, 1974, gave a letter to the doctors involved which contained the following instructions:

". . . Each of you will also be required to make a contribution of $500 to the Association as payment for stock which will be issued. . . ."

Dr. Trevino admitted twice that he complied with this direction; the first instance in his director's consent of September 1, 1974, and the second instance in the Doctor's individual consent as a shareholder. The Doctor further testified as follows:

"Q Now, Mr. Chaffin told you—told us, in his letter to you, with reference to forming this corporation that you should implement all of these things that were mentioned in this August 26th letter and, you subsequently implemented these things; did you not?

A Right."

Dr. Trevino testified that he never signed a check or any other consideration such as a check for the stock but admitted that Mrs. Molina, his bookkeeper, might have issued the check. This testimony does not meet his burden of proving by clear and convincing evidence that the stock was the Doctor's separate property. The Doctor's point 1 is overruled.

Suzanne as appellant challenges the jury's value finding by stating that as a matter of law the value was established to be $57,300.00 and that the value finding of $3,500.00 was against the great weight and preponderance of the evidence.

■■■ As a general rule the testimony of experts is not binding on the jury. Suzanne's contention that the value of the stock is established as a matter of law is based on the exception to that rule that where the nature of the expert's testimony is such that the trier of the facts must be guided by such opinion, it is conclusive. *Exxon Corp. v. West*, 543 S.W.2d 667 (Tex. Civ.App.—Houston [1st Dist] 1976, writ ref'd n.r.e.); *Scott v. Liberty Mut. Ins. Co.,*

204 S.W.2d 16 (Tex.Civ.App.—Austin 1947, writ ref'd n.r.e.). In *Exxon*, the court held that expert testimony on the amount of gas held in a reservoir was conclusive and in *Scott*, a doctor's testimony on the cause, diagnosis and treatment of a disease was held to be conclusive.

In the present case, Suzanne would have us hold that the testimony of Robert May, an actuary, called as an expert to testify as to the value of the corporate stock, was conclusive under the exception announced in *Exxon Corp. v. West*, supra. Mr. May testified that the value of the stock was $57,300.00. Mr. May's opinion was that one-third interest in the corporate stock was worth $40,000.00 (subject to a $700.00 discount for time payments). Further, upon the redemption of Dr. Pena's stock (Dr. Pena left the association in 1975 after a disagreement) the shares owned by the Trevinos increased from one-third to one-half interest with an appreciation in value of $18,000.00, being one-half of the cost of the redemption.

 Expert testimony on *value* is not binding upon jurors. *Maddox v. Maddox*, 489 S.W.2d 391 (Tex.Civ.App.—Houston [1st Dist] 1973, no writ); *Tuttle v. State*, 381 S.W.2d 330 (Tex.Civ.App.—Texarkana 1964, writ ref'd n.r.e.); *Steele v. City of Anson*, 229 S.W.2d 948 (Tex.Civ.App.—Eastland 1950, no writ). Therefore, the testimony of Mr. May as to the value of the corporate stock was not binding on the jury. Suzanne's contention that the value of the stock was established as a matter of law is without merit.

Suzanne in her alternate theory of error argues that the jury's finding is so against the great weight and preponderance of the evidence as to be clearly unjust. We disagree.

Robert May testified for Suzanne and stated that the value of the stock was $57,-300.00. This value was based on testimony previously summarized in this opinion. To corroborate this testimony Suzanne introduced the Stock Purchase Agreement which required the stock to be redeemed by the corporation at one-half of the Doctor's an-

nual salary on the death of a stockholder and at one-third of his annual salary if terminated by the Association. To show how this redemption plan worked, testimony was elicited which showed that Dr. Pena received $36,000.00, or one-third of his annual salary, for his share of the stock when he retired from the professional association because of a disagreement.

The Association provided the following benefits to each of the doctors: a car with insurance and payment for mileage, life insurance, reimbursement for all medical expenses, and retirement and profit sharing plans. In forming the Association and disbursing the partnership all debts of the partnership were paid off and the remaining accounts receivable were transferred to the Association without regard to their collectability. The value of the Doctor's share of the accounts receivable was shown to be $45,000.00.

Evidence which supports the jury's determination of value less than $57,300.00 included the following. Doctor Trevino purchased his interest in the Association for $500.00 and the Association had been in existence only since September 1, 1974. The Association was forced to borrow money to purchase Dr. Pena's stock pursuant to the agreement. The Association did not own any assets other than the good will of the individual doctors employed by it. The stock of the Association could not be bought or sold by anyone except the Association or doctors employed by the Association.

Further, as previously noted, the Stock Purchase Agreement value was based on the salary of the doctor. Paragraph 3 of the Employment Agreement provided that a doctor's salary be based on present and future revenues of the Association and the present and future performance and productivity of the doctor and that, accordingly, salaries are subject to adjustment, increases or decreases, at the discretion of the Board of Directors.

The purchase price was further limited by the Stock Purchase Agreement in paragraph 23 where the total price to pay for a

shareholder's stock was one-third of the annual salary at the time of termination. Therefore, the acquisition of Dr. Pena's shares could not affect the value to be paid under the Stock Purchase Agreement.

In approaching a point based upon the sufficiency of the evidence appellate courts may only determine whether the fact finding of the jury is supported by the evidence. Even if we would have found other than what the jury found, we cannot reverse on that basis. The finding must be so against the great weight and preponderance of the evidence as to be clearly wrong. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). In this case there was evidence of value of $500.00 and further evidence of value of $57,300.00. So the jury finding $3,500.00 was more than the lowest value that could be inferred from the evidence and less than the highest value testified to. Suzanne's points 1, 2, 3, 4 and 5 are overruled.

The Doctor's point 2 appears as follows:

"The trial court erred in finding that the parties' Trevino had a present vested community property interest in the pension and profit sharing plans of the Professional Association and in ordering Jorge Trevino to pay Suzanne Trevino one-half of the present value thereof as found by the jury."

We are of the opinion that the Doctor's basis for argument has been removed by the Supreme Court's decision in *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.Sup.1976). In *Cearley* the Supreme Court removed the problem of "vested" versus "nonvested" property interests when it held:

". . . Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding."

Doctor Trevino also challenges the trial court's action in dividing the value of the retirement plan now rather than awaiting for it to vest. We find this action to be clearly within the trial court's discretion. Tex.Family Code Ann. § 3.63. The Doctor's point 2 is overruled.

The Doctor also asserts error (point 3) in the trial court's reimbursement of the community estate for the use of community funds to pay the separate property debts of the Doctor. This problem developed as result of the Doctor's use of the First National Bank of McAllen checking account to pay off antenuptial debts of $8,634.00 to Metropolitan National Bank and $7,331.00 to Banker Investors. We can find no error in the trial court's reimbursement of the community estate for this sum.

Dr. Trevino managed the parties' community estate during the marriage including the First National Bank of McAllen checking account and, as such, a trust relationship existed between the Doctor and his wife. *Dudley v. Lawler*, 468 S.W.2d 160 (Tex.Civ.App.—Waco 1971, no writ); *Sibley v. Sibley*, 286 S.W.2d 657 (Tex.Civ.App.—Dallas 1955, writ dism'd). Section 202(2)g of the Restatement of Trusts (2d § 1959) states:

"Where the trustee wrongfully uses trust funds in discharging an obligation owed by the trustee individually to a third person, the beneficiary is entitled to be subrogated to the rights which the obligee had before the obligation was discharged. A court of equity will afford relief to the beneficiary by putting him in the position occupied by the obligee before the obligation was discharged. . . ."

See also *Van v. Webb*, 147 Tex. 299, 215 S.W.2d 151 (1948); *Parmeter v. Parmeter*, 348 S.W.2d 51 (Tex.Civ.App.—Dallas 1961, no writ); 57 Tex.Jur.2d Trusts Sec. 89 (1964). The trial court, therefore, did not abuse its discretion in reimbursing the community estate for the payment of the Doctor's separate debts from community funds.

Doctor Trevino contends that fraud was not alleged by the respondent nor found by the trial court in its judgment. We find the following language of Suzanne's petition sufficient in the absence of any exception thereto by the Doctor, in

light of *Waggener v. Waggener*, 460 S.W.2d 251 (Tex.Civ.App.—Dallas 1970, no writ):

> "During the marriage of the parties a substantial amount of community property was accumulated, most of which was unknown to Mrs. Trevino, who is a housewife with very limited knowledge of the nature and extent of the parties' holdings.
>
> \* \* \* \* \* \*
>
> Mrs. Trevino is informed and believes that meaningful portions of the parties' community estate may have been diverted from the community into the hands of third parties by Dr. Trevino, in fraud of Mrs. Trevino's rights. Further, Mrs. Trevino has adequate reason to believe that Dr. Trevino is actively concealing substantial amounts of community property in order to avoid a just and fair division of such property with Mrs. Trevino."

Further, there were no requests for findings of fact or requests for special issues on the matter. Therefore, we must consider all the evidence as a whole, indulging in every reasonable presumption in favor of the facts which will support the judgment. Clearly the evidence supports this action of the trial court. *Depuy v. Depuy*, 483 S.W.2d 883 (Tex.Civ.App.—Corpus Christi 1972, no writ); *Bryant v. Bryant*, 478 S.W.2d 602 (Tex.Civ.App.—Waco 1972 no writ). The Doctor's point 3 is overruled.

■ The Doctor's final point (4) complains of the trial court's reimbursement of the community estate for funds expended for improvements on the Doctor's residence at 142 West Harvey, McAllen, Texas. A reading of the argument contained within this point shows that the Doctor on appeal is for the first time complaining of the submission of special issues 5 and 6 which issues relate to the residence improvement matter. It is clear that such complaint cannot form the basis for reversal unless objected to at the time of submission. Rule 274, T.R.C.P. Consequently, any error in the submission of special issues has been waived by the failure of the Doctor to properly object.

■ As error the Doctor further claims that the issue was improperly submitted in that the proper issue would have asked if the community expenditures were greater than the benefits received from such expenditures. The Doctor has stated the correct rule for the determination of reimbursement where expenditures were for interest on prenuptial debts or taxes on separate property. *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328 (1943); *Ames v. Ames*, 188 S.W.2d 689 (Tex.Civ.App.—Galveston, 1945 no writ). The proper rule for reimbursement where funds are expended for improvements on a spouse's separate property is either the amount of the enhanced value of the separate property by virtue of the improvements or the amount of community funds expended for the improvements, whichever is less. *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620 (1935); *Harris v. Royal*, 446 S.W.2d 351 (Tex.Civ.App.—Waco, 1969, writ ref'd n.r.e.). This is the standard which was incorporated in the issues actually submitted. There could not, therefore, be any error in the submission of these issues even if the Doctor had perfected his point of error.

■ The Doctor also complains that Suzanne has failed to prove that the improvements to the residence were made with community property. With this assertion we cannot agree. Suzanne testified extensively to the type and cost of improvements. Furthermore the only funds for which reimbursement is sought were those expended from First National Bank of McAllen account. This account, as previously noted, was a community account. Doctor Trevino even testified to paying for a number of improvements out of this account as well as with cash. Appellant's final point is overruled.

Suzanne's sets forth a group of points (8, 9, 10, 11 and 12) which assert error in the trial court's refusal to grant alimony pendente lite through the complete appeal of this case; the refusal to order accounting of the Doctor's earnings from the date of filing until the final decree; the granting of the divorce to the Doctor rather than to

Suzanne; and the refusal to require the Doctor to assume Suzanne's 1976 tax liability. After a complete review of the record we can find no abuse of discretion by the trial court in these matters.

◼︎ Clearly there is a right to alimony pendente lite pending the appeal of a divorce decree. *Ex Parte Hodges*, 130 Tex. 280, 109 S.W.2d 964 (1937); *Ex Parte Thompson*, 510 S.W.2d 165 (Tex.Civ.App.— Dallas 1974, no writ); *Ellis v. Ellis*, 225 S.W.2d 216 (Tex.Civ.App.—San Antonio 1949, no writ); *Williams v. Williams*, 60 Tex.Civ.App. 179, 125 S.W. 937 (1910, writ dism'd). The decree must, however, provide for the continuance of alimony pendente lite. An order of the trial court on October 3, 1975, provided that alimony pendente lite commence on November 3, 1975, and that it would continue "until final hearing in this cause or until further order of this court." The trial court on April 2, 1976, entered an order terminating the order of October 3, 1975, as of March 5, 1976, the date of a letter to the parties in which the trial judge indicated that he was granting the divorce. We find no abuse of discretion in this action in view of the language of the original order.

Further, the language of the cases previously cited does not require that alimony orders be continued upon appeal but does allow such. We can find no abuse of discretion, therefore, in denying appellant's request. This is especially so when the added facts that Suzanne had received her real estate license and her first commission and was entitled to receive $5,000.00 pursuant to the divorce decree all are considered.

◼︎ Suzanne also complains of the trial court's denying an accounting for the income of the Doctor and the earnings received from the parties assets from and after the date of the filing of the divorce petition. We can find no abuse of discretion in this action of the trial court either. The parties did not truly have any producing community assets other than the Doctor's practice. This income was offset by the trial court's award of alimony pendente lite from November 3, 1975 until the court

awarded the divorce. And about the lack of accounting complaint, the facts were fully developed at the rather lengthy trial which lasted from October 17, 1975 until December 3, 1975.

Suzanne additionally argues abuse of discretion by the trial court in its requirement that each party pay his or her tax liabilities of 1976. In support of this position Suzanne cites *Cole v. Cole*, 532 S.W.2d 102 (Tex.Civ.App.—Dallas 1975). In *Cole*, the Court held that the trial court's refusal to consider the tax consequences of its divorce decree was an abuse of discretion. The present case is distinguishable in that the trial court here did consider the tax liabilities of the parties in dividing the property.

The Doctor was clearly ordered to pay all Federal income tax liabilities of the parties for the calendar year of 1975, and prior tax years, as well as the tax liabilities of the parties on the monies earned and received by the Doctor from all sources including his salary from the professional association. The parties were each ordered to file Federal income tax returns reflecting monies received by each of them during 1976.

◼︎ Suzanne complains that this order ignores the realities of the present Internal Revenue Code in that she is responsible for one-half of taxes owed by the Doctor on his income up to the date of the divorce. 3 Mertins, Law of Federal Income Taxation explains this as follows:

"§ 19.42. —By Divorce or Separation. The community is terminated in all states by an absolute decree of divorce, . . . All income earned prior to the date of the divorce in the absence of a valid agreement to the contrary, however, is community and is taxable one-half to the husband and one-half to the wife whether it is received prior or subsequent to the date of the divorce. Each spouse is entitled to deduct one-half of the deductions properly chargeable against such income. The division of the community property in the divorce decree does not affect the liability for community income earned prior to the divorce, . . . ."

Suzanne argues, therefore, that regardless of the trial court's order she must report one-half of all of the Doctor's community income. This is simply not correct. The order clearly requires the Doctor to assume all of the tax liabilities for income received from any sources including his salary from the professional association. This requirement was clearly within the trial court's discretion. Texas Fam.Code Sec. 3.63 (1976); *Cole v. Cole*, supra; *Brooks v. Brooks*, 515 S.W.2d 730 (Tex.Civ.App.— Eastland writ ref'd n.r.e.); *Vickerstaff v. Vickerstaff*, 392 S.W.2d 559 (Tex.Civ.App.— El Paso 1965, no writ).

■ Suzanne next complains, in the present group of points, of the trial court's action in granting the divorce to the Doctor, as petitioner, and allowing the Doctor to retain control of the community estate pending appeal. In that regard both parties by their pleadings requested that a divorce be granted. To these complaints we can find no abuse of discretion. See Tex.Family Code Ann. § 3.63. Suzanne's points 8, 9, 10, 11 and 12 are overruled.

Suzanne in her points 13 and 14 asserts error by the trial court's failure to submit the following.

> "Do you find from a preponderance of the evidence that Dr. Trevino has any interest in any deposits, certificates of deposit, or accounts in Mexico?
>
> You will answer 'Yes' or 'No'.
>
> We, the jury, answer: _____
>
> If you have answered the next preceding Special Issue No. 5 'Yes' and only in that event, then you will answer the following Special Issue:
>
> What do you find to be the value of the interest of Dr. Trevino in any such deposits, certificates of deposit, or accounts in Mexico?
>
> You will answer in Dollars and Cents, if any."

■ As a general rule a trial court is required to submit each requested special issue raised by the evidence. Rule 279, T.R.C.P. Our courts have held, however, that the proof offered must amount to more than a mere scintilla of evidence and do more than raise a mere suspicion in order to be relied upon as having probative force. Although there be slight testimony, if its probative force is so weak that it only raises a mere surmise or suspicion of the fact sought to be established, such testimony in legal contemplation falls short of being any evidence. *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d 7 (Tex.Sup.1969); *Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791 (1955).

■ The testimony and evidence relating to money deposited in Mexican banks raises no more than a suspicion of its existence as is shown by the following. The Doctor claimed his parents as dependents on his income tax returns. In support of this claim, checks were introduced showing payments to his father in Monterrey, Mexico. Suzanne showed, however, that the Doctor was receiving return payments from his father. Suzanne would further show that the Doctor was impeached when he claimed that he received no financial reports from Mexico and that this established the existence of the account. It is the general rule, however, that testimony which impeaches a witness is not substantive evidence of the fact sought to be shown. *Bradley v. Texas & P. Ry. Co.*, 1 S.W.2d 861 (Tex.Com.App.1928); *Atchison, Topeka & Santa Fe Railway Co. v. Denton*, 475 S.W.2d 821 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.).

Suzanne also claims that certain financial notes found on the Doctor's desk and in the home of the Doctor's father in Monterrey present sufficient facts to submit an issue to the jury. These notes, however, create no more than a suspicion as to the existence of such account and the failure of the probative value of this evidence is even more evident when the fact that they do not match is brought forth. Together this evidence does no more than create a suspicion as to existence of any bank accounts in Mexico. Appellant's points 13 and 14 are overruled.

■ Suzanne next says, in her point 15, that the amount of attorney's fees found

by the jury and awarded by the trial court are against the great weight and preponderance of the evidence. It is clear that the award of attorney's fees is within the discretion of the trial court in making an equitable division of property. Tex.Family Code Ann. § 3.63; *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1950); *Merrell v. Merrell*, 527 S.W.2d 250 (Tex.Civ.App.—Tyler 1975 writ ref'd n.r.e.). We can find no abuse of discretion, therefore, in the present award. Her point 15 is overruled.

In her point 16, Suzanne attacks the trial court's division of the property on an equal basis. She says she is entitled to more than one-half. We find that the trial court's plan of equal division of the property is not inconsistent with Section 3.63 of the Family Code. Consequently there was not abuse of discretion by the trial court's implementation of that plan. Suzanne's point 16 is overruled.

Finally, we will discuss Suzanne's group of points (6 and 7) wherein she asserts error in the trial court's determination that $17,000.00 ("policy loan") advanced from the Doctor's New York Life Insurance policy and deposited in the First National Bank of McAllen was a community debt. It is undisputed that this life insurance policy was the separate property of the Doctor in that the trial court so determined and neither party challenges such finding. The trial court further found that the checking account was a community account.

A loan or debt is a contract by which one party agrees to let another party have the use of a specific sum of money for a definite period with the stipulation that the borrower repay it with or without interest. *Shaw v. McShane*, 50 S.W.2d 278 (Tex. Com.App.1932, opinion approved). An examination of the loan provisions of the policy in question reveals that there is no requirement that the money be repaid. At most the policy provides that it be forfeited when the indebtedness exceeds the cash value of the policy. Thus it allows for repayment but does not require it. Further, the United States Supreme Court has determined that such loans are not indebtednesses but are payments. *Williams v. Union Central Life Ins. Co.*, 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711 (1933); *Board of Assessors of Parish of Orleans v. New York Life Insurance Co.*, 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597 (1910); *First Nat. Bank of Wichita Falls v. State Life Ins. Co. of Indianapolis, Ind.*, 80 F.2d 499 (5th Cir. 1935).

The Doctor (as well as Suzanne) was obligated to furnish support for community living, and if no community funds were available (as apparently was demonstrated by the testimony of Mr. Jones and petitioner's exhibit # 76), he was required to use separate funds to provide for the community. It is the general rule that separate funds spent for community living are deemed a gift to the community for its well-being and use. Tex.Family Code Ann. § 4.02; *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676 (1953); *In Matter of Marriage of Long*, 542 S.W.2d 712 (Tex.Civ.App. —Texarkana, 1976, no writ).

This action of the trial court in this instance, may have resulted in a reduction of the community estate by $17,000.00 and of Suzanne's award by $8,500.00. The court, however, required the Doctor to assume the tax liabilities of the parties for 1975 and in effect for 1976 and to pay to Suzanne $5,700.00 in attorney's fees. As we have heretofore pointed out in this opinion, these particular actions were within the discretion of the trial court. The result is that Suzanne was apparently awarded an estate which may be greater than one-half of the community estate, even considering the $8,500.00. It is our duty to determine whether this action amounted to a clear abuse of discretion by the trial court. A clear abuse of discretion is shown only if the division of property is manifestly unjust and unfair. Tex.Family Code, Ann. § 3.63; *Mercer v. Mercer*, 503 S.W.2d 395 (Tex.Civ. App.—Corpus Christi 1973, no writ); *Hayes v. Hayes*, 378 S.W.2d 375 (Tex.Civ.App.— Corpus Christi 1964, writ dism'd).

There were factors other than the foregoing that the trial court was entitled

to consider. The record showed among other things, the following: ownership, of considerable separate property by each; lack of children born of this marriage; a marriage of brief duration (less than three years); considerable disparity in the ages of the parties (at the time of trial the Doctor was 52 years old, Suzanne 33); considerable financial obligation of the Doctor to his wife and children of his former marriage.

With all of these factors in mind we hold that the division of the property (including the matter of $17,000.00) was not manifestly unjust and unfair and that the trial court did not abuse its discretion. Suzanne's points 6 and 7 are overruled.

The judgment of the trial court is affirmed.