Dismissed and Memorandum Opinion filed October 25, 2005









Dismissed and Memorandum Opinion filed October 25, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-04-00885-CV

___________

PADDY ARGOVITZ, Appellant

V.

JERRY ARGOVITZ, Appellee

 



On
Appeal from the 309th District Court

Harris County, Texas

Trial
Court Cause No. 02-58210



 

M E M O R A N D U M   O P I N I O N

Paddy Argovitz appeals from a final
judgment dissolving her marriage to Jerry Argovitz.  She contends that before entry of judgment,
she withdrew her consent to the settlement agreement on which the judgment was
based.  She further contends that her
initial consent was fraudulently induced. 
Meanwhile, Jerry has filed a motion that was taken with the appeal,
arguing that Paddy=s appeal should be dismissed because she
has accepted benefits awarded to her in the judgment.  We dismiss the appeal.

 








I. 
Background

Paddy Argovitz filed for divorce from
Jerry Argovitz in November 2002.  Paddy
and Jerry signed a settlement agreement, which purports to be a mediated
settlement agreement, on January 9, 2004. 
The agreement was then filed with the district court clerk.  Subsequently, Paddy filed a ANotice of
Rescission and Withdrawal of Consent@ on March 24, and
Jerry filed a AMotion to Enter Judgment on Mediated
Settlement Agreement@ on April 2.  The trial court held a hearing and granted a
judgment of divorce, dividing the marital property pursuant to the settlement
agreement.

Paddy subsequently filed this appeal, and
Jerry filed a motion to dismiss the appeal. 
In his motion to dismiss, Jerry contends that because Paddy voluntarily
accepted benefits under the judgment of divorce, she is estopped from appealing
from that judgment.  The motion,
supplemental motion, and attached affidavits by Jerry assert that Paddy
voluntarily received numerous benefits under the judgment, including real
property valued at $1 million, cash from various accounts totaling over
$460,000, payment of her debts totaling over $61,000, an undivided fifty
percent interest in other real property, an undivided fifty percent interest in
certain corporate stock, frequent flyer miles, and an automobile.[1]  Also attached to the motions were various
cancelled checks, statements, deeds, letters, and stock certificates
purportedly evidencing Paddy=s receipt of these
items.








In her response to the motion, Paddy
contends that (1) Jerry=s dismissal argument was waived because
the motion was untimely filed; (2) the motion impermissibly relies on evidence
that is outside the record; (3) the conflicting affidavits of Paddy and Jerry
raise fact issues that should not be resolved by an appellate court; (4) the
cash benefits received by Paddy can simply be taken into account by the trial
court on remand and do not necessitate dismissal; and (5) the benefits received
by Paddy were involuntary due to economic necessity.  Paddy also attached an affidavit to her
response, in which she acknowledged having received monetary benefits in
keeping with the judgment but states that she did not request that Jerry pay
the third-party creditors and that she received the benefits based on economic
necessity.

II. 
The Acceptance of Benefits Doctrine

Generally, a party who accepts the
benefits of a judgment is estopped from challenging the judgment by
appeal.  See Tex. State Bank v. Amaro,
87 S.W.3d 538, 544 (Tex. 2002); Carle v. Carle, 149 Tex. 469, 234 S.W.2d
1002, 1004 (1950); Waite v. Waite, 150 S.W.3d 797, 803 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).  In other
words, A[a] litigant
cannot treat a judgment as both right and wrong, and if he has voluntarily
accepted the benefits of a judgment, he cannot afterward prosecute an appeal
therefrom.@  Carle,
234 S.W.2d at 1004.  The doctrine often
arises in divorce cases when one spouse accepts certain benefits of the
judgment and then tries to appeal the remainder of the judgment.  Waite, 150 S.W.3d at 803.  The burden is on the appellee to prove that
the appellant is estopped by the acceptance of benefits doctrine.  Id. 
There are exceptions to the doctrine, including (1) when a reversal of
the judgment could not possibly affect an appellant=s right to the
benefit accepted, and (2) when the acceptance of benefits is not voluntary
because of financial duress or other economic circumstances.  Id. at 803-04.  These exceptions are very narrow.  Id. at 804.

On their face, Jerry=s motion to
dismiss, supplemental motion, and attached affidavits present a strong case
that Paddy voluntarily accepted benefits under the judgment, thus estopping her
from appealing that judgment.  We now
examine Paddy=s counter arguments.

III. 
Paddy=s Responsive Arguments

A. 
Timeliness








Paddy first contends that the motion to
dismiss was untimely filed under Texas Rule of Appellate Procedure 10.5, citing
Trevino v. Trevino, 555 S.W.2d 792, 795 (Tex. App.CCorpus Christi
1977, no writ).  Tex. R. App. P. 10.5. 
We have previously rejected this same argumentCholding that Rule
10.5 does not apply in this contextCas have other
courts of appeals.  Waite, 150
S.W.3d at 802-03; Bloom v. Bloom, 935 S.W.2d 942, 946 (Tex. App.CSan Antonio 1996,
no writ); Aycock v. Pannill, 853 S.W.2d 161, 163-64 (Tex. App.CEastland 1993,
writ denied).  Accordingly, we find that
Jerry=s motion was not
untimely filed.

B. 
Evidentiary Issues

Paddy next contends that the motion
impermissibly relies on evidence that is outside the record, and t the
conflicting affidavits of Jerry and Paddy raise fact issues that should not be
resolved by an appellate court.  We
disagree with both contentions.

Under the first argument, Paddy asserts
that the attachments to Jerry=s affidavits are
not properly authenticated and thus do not support the contention that Paddy
received benefits.  However, even if the
attached documents are disregarded, Jerry=s affidavits make
statements of fact in support of the motions. 
Paddy does not directly attack the propriety of Jerry=s affidavits.[2]  Indeed, she admits in her own affidavit that
she received monetary benefits in keeping with the judgment, and she does not
deny that she received the real property, the stock, the frequent flyer miles,
and the vehicle.  Thus, there was
substantial evidence to support the contentions in the motions, even disregarding
the attachments to Jerry=s affidavit.  See, e.g., Bloom, 935 S.W.2d 942
(applying acceptance of benefits doctrine based solely on appellee=s affidavit). 








Paddy additionally contends that the
conflicting affidavits create fact issues that an appellate court is not in a
position to resolve.  However, the only
alleged conflict identified by Paddy, or apparent from the affidavits
themselves, is the dispute as to whether Jerry paid the third-party creditors
unilaterally or at Paddy=s request. 
However, this single conflict is not a bar to finding that Paddy
voluntarily accepted benefits of the judgment. 
The payments to creditors amounted to a little over $61,000, out of
alleged benefits received of well over $1.5 million.  Even if we disregard the payment to
third-party creditors, the uncontroverted 
portions of Jerry=s affidavits and the admissions in Paddy=s affidavit are
sufficient to demonstrate that Paddy voluntarily received benefits under the
judgment.  Thus, the apparent conflict
regarding third-party creditors need not be resolved in order to rule on the
motion to dismiss.

C.  Exceptions to the Doctrine

Paddy additionally asserts that she meets
two exceptions to the acceptance of benefits doctrine, contending: (1) the
reversal of the judgment could not possibly affect her right to the benefits
she accepted, and (2) the acceptance of benefits was not voluntary but was due
to economic necessity.  See Waite,
150 S.W.3d at 803-04.  We discuss each in
turn.

1. 
Reversal of the Judgment

In Carle, the supreme court
recognized an exception to the acceptance of benefits doctrine for when a
reversal of the judgment could not possibly affect the appellant=s right to the
benefit accepted under the judgment.  149
Tex. at 472, 234 S.W.2d at 1004.  The
court explained:  A[w]here an
appellant accepts only that which appellee concedes, or is bound to concede, to
be due him under the judgment he is not estopped to prosecute an appeal which
involves only his right to a further recovery.@  Id. 
This exception is a narrow one.  Id.  Its resolution turns on the answer to two
questions:  (1) could a reversal of the
judgment possibly affect appellant=s right to the
benefits secured by her under the judgment? and (2) would appellee be compelled
to concede in a new trial that appellant has a right to retain the benefits
regardless of the outcome of the litigation? 
Id.; Waite, 150 S.W.3d at 807.













Paddy specifically argues that in a
retrial, the trial court could simply take into account the cash benefits that
she received when the court makes a new Ajust and right
division@ of the marital
estate, citing Demler v. Demler, 836 S.W.2d 696, 697 (Tex. App.CDallas 1992, no
writ).  In Demler, the court indeed stated that the
acceptance of cash benefits was a form of Carle exception, because the
trial court on remand could redivide the property while taking into account the
previously accepted cash benefit.  836
S.W.2d at 698.  However, the court
clearly emphasized that this form of the Carle exception applied only
when cash benefits were accepted.  Id.;
see also Trevino v. Trevino, 555 S.W.2d 792, 795-96 (Tex. App.CCorpus Christi 1977, no writ)
(applying cash benefits exception and emphasizing that only cash benefits were
accepted).  Paddy=s argument
completely ignores the fact that she did not simply accept a cash benefit under
the judgment; she additionally accepted real property valued at $1 million,
corporate stock, frequent flyer miles, and an automobile.  Paddy asks this court to reverse the judgment
based on the settlement agreement; whereupon, the entire marital estate would
be subject to a new just and right division. 
See Tex. Fam. Code Ann.
' 7.001 (Vernon
1998) (mandating a Ajust and right@ division of
marital property in a divorce decree); Carle, 234 S.W.2d at 1004
(stating that on remand trial court would have mandatory duty to divide marital
estate).  It is extremely unlikely that
Jerry would concede, or would be required to concede, Paddy=s entitlement to
any of the items she has accepted under the original judgment.  See Waite, 150 S.W.3d at 808.  Indeed, Paddy offers no reason why Jerry
could not request, and the trial court could not award to him, the real
property, the stock, the frequent flyer miles, and the vehicle.  It is, therefore, clear that (1) a reversal
of the judgment could very possibly affect Paddy=s right to the
benefits secured by her under the judgment, and (2) Jerry would not be
compelled to concede that Paddy has a right to retain the benefits she has
accepted.[3]  The facts of this case do not fit within the
narrow Carle exception to the acceptance of benefits doctrine.

2. 
Economic Necessity

The economic necessity exception applies
when the acceptance of benefits was not voluntary but was necessary because of
financial distress or other economic circumstances.  Waite, 150 S.W.3d at 803.  Paddy contends that her acceptance of
benefits Aarose from sheer economic necessity.@  She states that without accepting certain
benefits, she had no way to meet her monetary obligations, including paying
property taxes of approximately $28,000, homeowners= association dues
of approximately $1,850, homeowner=s insurance of
approximately $3,000, outstanding fees for an accounting expert of $43,000, and
outstanding legal fees of $100,000.  She
further alleges that she had no ability to meet everyday living expenses or to
maintain any semblance of the lifestyle to which she was accustomed.

Paddy=s economic
necessity argument fails for several reasons. 
To begin with, she makes no such argument regarding her acceptance of
the real property, the corporate stock, the frequent flyer miles, or the
automobile.  Even if we were to assume
that the entire amount of the cash benefits she accepted was due to economic
necessity, her failure to explain her acceptance of over $1 million in non-cash
benefits would prevent her from falling into this exception.  See Waite, 150 S.W.3d at 805-06
(finding exception did not apply where husband=s affidavit failed
to identify any economic necessity requiring him to demand that wife execute a
warranty deed transferring real property to him).








Further, the expense items identified by
Paddy total $175,850.  Even if we ignore
the benefits listed in the previous paragraph (the real property, stock, miles,
and vehicle) and the disputed payments to third-party creditors (over $61,000),
Jerry established that Paddy accepted over $460,000 in cash benefits.  This leaves over $285,000 in additional
benefits accepted but unaccounted for by Paddy in her response to the
motion.  She states that she had no ability
to meet everyday living expenses or to maintain her lifestyle, but she offers
no specifics regarding what these items entailed.  See Waite, 150 S.W.3d at 805-06
(finding exception did not apply where husband=s affidavit failed
to provide any specifics regarding claimed inability to meet daily living
expenses).[4]  She has therefore failed to show that
economic necessity required that she accept these benefits.

We additionally note that Paddy does not
contend that she has no other sources of income or that she has no ability to
borrow money to meet her expenses; likewise, she fails to explain why she could
not have obtained money during the pendency of the appeal by requesting
temporary support payments.  See Tex. Fam. Code Ann. ' 6.709 (Vernon
1998); Waite, 150 S.W.3d at 807 n.13; McAlister v. McAlister, 75
S.W.3d 481, 483 (Tex. App.CSan Antonio 2002,
pet. denied).  For the foregoing reasons,
Paddy falls short of establishing that she accepted the benefits of the
judgment involuntarily out of economic necessity.

IV. 
Conclusion

In summary, we find that Jerry has
established that Paddy voluntarily accepted benefits under the trial court=s judgment of
divorce.  We further find that Paddy has
failed to demonstrate that she falls under any exception to the doctrine of
acceptance of benefits.  Consequently,
Paddy is estopped from appealing the judgment.








We grant Jerry=s motion to
dismiss.  Accordingly, we dismiss Paddy=s appeal from the
judgment of divorce.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion/Opinion filed October 25, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.











[1]  Jerry=s affidavit did not provide monetary values for the
additional real property, stock, frequent flyer miles, or automobile.





[2]  In his
affidavits, Jerry averred that the facts stated therein were based on his personal
knowledge.  A typical entry in the
affidavits reads as follows:

 

Paddy
demanded from me and voluntarily accepted my payment of her portion of the
Southwest Bank of Texas Account [account number omitted] in the amount of
$44,165.92 awarded her under the Final Decree of Divorce, Section B, Item W-6-a
(p. 8), as evidenced by the Southwest Bank of Texas account statement and
canceled check attached as Exhibit B.





[3]  At oral
argument, Paddy=s counsel emphasized that the marital estate in this
case, estimated at $22 million, could easily absorb the over $1.5 million in
allegedly accepted benefits; thus, counsel contended, the trial court could
simply take these benefits into account when redividing the property on
remand.  However, even under the Demler
and Trevino cases, while this capacity to absorb might be a necessary
predicate for application of the Carle exception, it is not a sufficient
predicate to mandate application of the exception.  See Demler, 836 S.W.2d at 698; Trevino,
555 S.W.2d at 795-96.  The key factor
here is that a large percentage of the accepted benefits were non-cash
benefits; thus, Jerry would not have to concede Paddy was entitled to them in
the event of a remand.  See Waite,
150 S.W.3d at 808; Demler, 836 S.W.2d at 698; Trevino, 555 S.W.2d
at 795-96.





[4]  Paddy offers
no authority for the contention that wanting to maintain a certain lifestyle
can be a source of economic necessity, and caselaw does not suggest that such a
notion is anything short of highly dubious. 
See Herschberg v. Herschberg, 994 S.W.2d 273, 278-79 (Tex. App.CCorpus Christi 1999, no pet.) (holding that temporary
spousal support pending redivision of property on remand should only be granted
for necessities and not to maintain a spouse at a particular standard of
living).