

**NUMBER 13-08-00722-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JUAN HERNANDEZ,**                                                                       **Appellant,**

**v.**

**YOLANDA HERNANDEZ,**                                                                **Appellee.**

### On appeal from the 197th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Juan Hernandez, appeals from a divorce decree which ended his marriage to appellee, Yolanda Hernandez, and divided the community estate. By a single issue, Juan challenges the trial court's division of the community estate by arguing that the trial court erred in entering a finding that there was no evidence of community indebtedness. We affirm.

# I. BACKGROUND

Juan and Yolanda married on March 20, 1973, and after thirty-four years of marriage, Juan filed for divorce on April 5, 2007. After a bench trial, the trial court entered its "Final Decree of Divorce" on October 8, 2008. The divorce decree neither references nor provides for a division of any debt acquired during the marriage. On December 3, 2008, the trial court entered findings of fact and conclusions of law. The trial court found that the community estate consisted of various "personal property" as well as:

A. La Cantera Special Events Center ["La Cantera"] and Juan's Catering business, including:

   a. 3.900 acres out of the South part of Block 19, Los Ebanos Properties Subdivision, Brownsville[,] Cameron County, Texas[,]

   b. improvements, furniture, fixtures, equipment[,] and inventory[,]

   c. checking account at First National Bank[;] and

B. Marital residence [described as,]

   a. Lot 20, Block 2, Quail Hollow Unit No. 2, Abstract 2, Brownsville, Cameron County, Texas[.]

The trial court also found that: "Neither party presented evidence of any liabilities of the community estate. Therefore, the [c]ourt finds there are no liabilities of the community estate." One-half of the community estate was awarded to each spouse—Yolanda received property valued at $129,464 which consisted of, among other things, the marital residence, and Juan received property valued at $1,022,535 which consisted of, among other things, La Cantera. In order to achieve a "just and right division," Juan was ordered to pay $446,535.50 to Yolanda.

On appeal, Juan asserts that the evidence is legally insufficient to support the trial court's finding that there are no liabilities of the community estate "because the undisputed

2

evidence establishes as a matter of law that the community estate had substantial debt"

comprised of La Cantera's long-term liabilities—two First National Bank loans totaling

$656,548.13. Juan prays that we modify the Final Decree of Divorce to reflect this liability

and argues that the $446,535.50 amount that he was ordered to pay to Yolanda should be

reduced by half the above-mentioned long-term liabilities. While this appeal was pending,

Yolanda filed a motion to dismiss. Before considering the merits of Juan's appeal, we first

address Yolanda's motion to dismiss. *See Garza v. Garza*, 155 S.W.3d 471, 474 (Tex.

App.–San Antonio 2004, no pet.).

## II. MOTION TO DISMISS

In her motion to dismiss, Yolanda argues that Juan's appeal must be dismissed

under the acceptance of benefits doctrine.[1] We disagree.

Under the acceptance of benefits doctrine, "[a] litigant cannot treat a judgment as

both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he

cannot afterward prosecute an appeal therefrom." *Carle v. Carle*, 149 Tex. 469, 234

S.W.2d 1002, 1004 (1950). However, narrow exceptions to the acceptance of benefits

doctrine exist; the doctrine does not apply if: (1) reversal of the judgment could not

possibly affect Juan's right to the benefits already secured under it, *see Waite v. Waite*,

150 S.W.3d 797, 804 (Tex. App.– Houston [14th Dist.] 2004, pet. denied) (citing *Tex. State

Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002); *Carle*, 234 S.W.2d at 1004; *Blaylock v.

Blaylock*, 603 S.W.2d 254, 255 (Tex. Civ. App.–Houston [14th Dist.] 1980, no writ)); (2)

economic circumstances compelled Juan to accept benefits, *see Smith v. Tex. Commerce

Bank Corpus Christi*, 822 S.W.2d 812, 814 (Tex. App.–Corpus Christi 1992, writ denied);

---

[1] Juan objects to Yolanda's motion to dismiss because Yolanda did not confer with him or include a certificate of conference, as required by Texas Rule of Appellate Procedure 10.1(a)(5). *See* TEX. R. APP. P. 10.1(a)(5). We do not condone Yolanda's disregard of the rule; however, because Juan has filed a response to Yolanda's motion to dismiss, no purpose would be served by striking the motion and requiring a conference.

or (3) Juan's acceptance of cash benefits under the judgment was not prejudicial to Yolanda. *See Trevino v. Trevino*, 555 S.W.2d 792, 795-96 (Tex. Civ. App.–Corpus Christi 1977, no writ).

Yolanda points to two specific actions that she contends constitute Juan's voluntary acceptance of the benefits of the judgment. Yolanda asserts that: (1) "[o]n October 14, 2008, [Juan] pledged the real property awarded to him in the Final Decree of Divorce . . . as collateral for a loan from Falcon Bank in the sum of $720,000"; and (2) Juan removed certificates of deposit that were awarded one-half to each spouse from First National Bank and "deposited them into [Juan]'s name only at Falcon Bank." The record supports these assertions; therefore, we must grant Yolanda's motion to dismiss unless Juan satisfies an exception to the acceptance of the benefits doctrine.

Juan argues that the acceptance of the benefits doctrine does not bar his appeal because a reversal of the judgment could not possibly affect his right to the benefits—the loan and certificates of deposit—already secured under it. Specifically, Juan contends that his "sole issue on appeal involves only his right to a further recovery by seeking a reduction" of the $446,535.50 that he was ordered to pay to Yolanda; thus, his appeal does not involve his "rights" in the certificates of deposit or the property used to secure the loan. Juan frames his appellate issue as a "legal sufficiency" challenge. However, in family law cases, legal sufficiency is not an independent ground of error; instead, it is a factor in our assessment of whether the trial court abused its discretion in its property division. *Zorilla v. Wahid*, 83 S.W.3d 247, 252 (Tex. App.–Corpus Christi 2002, no pet.). Concluding that the trial court abused its discretion in the property division requires reversal of the trial court's judgment. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). Reversal of a final divorce decree often results in the trial court's re-division of the community property

4

in order to achieve a just and right division.[2]  *See Waite*, 150 S.W.3d at 808 ("If we were to reverse because the trial court erred in characterizing [certain property] as community, the trial court would almost certainly re-divide the community property."); *Bloom*, 935 S.W.3d at 947-48 (holding that "the benefits [appellant] has accepted, including her share of the community estate, relief from community debts, and the ordered child support, could be affected" where appellant requested a new trial after defaulting in a divorce proceeding).

The trial court divided the community property evenly between Juan and Yolanda in the underlying divorce decree.  Juan does not contend that the original division was entirely erroneous; instead, he only argues that the trial court failed to acknowledge and divide a substantial amount of debt incurred by the parties.  The property accepted by Juan is not the subject of his appeal.  By his appeal, Juan seeks only further recovery in the form of a reduction of the $446,535.50 that he was ordered to pay to Yolanda.  Thus, if we were to reverse the underlying judgment and remand to the trial court for a just and right division, it is highly likely that the trial court would refrain from re-dividing all of the community property and instead would simply reduce the amount of payment that it has ordered Juan to pay to Yolanda by half of the amount of debt.  *See Kline v. O'Quinn*, 874 S.W.2d 776, 781 (Tex. App.–Houston [14th Dist.] 1994, writ denied) (holding that acceptance of the benefits doctrine did not apply where appellant accepted compensatory damages but on appeal raised only issues regarding punitive damages and attorney's fees).  The facts presented in this case seem to indicate that the reversal of the judgment could not possibly affect Juan's right to the benefits already secured under it.  Although this exception is narrow, out of an abundance of caution, we conclude that Juan is not barred by the acceptance of benefits doctrine from asserting this appeal.  Accordingly, Yolanda's motion

---

[2] On appeal, Juan does not seek reversal of the trial court's judgment.  Instead, he asks this Court to modify, or order the trial court to modify, the "Final Decree of Divorce" by reducing the amount he is obligated to pay Yolanda.

to dismiss is DENIED.

### III. LIABILITIES OF THE COMMUNITY ESTATE

By his sole issue, Juan contends that the evidence is legally insufficient to support the trial court's finding that there are no liabilities of the community estate because the evidence proves a matter of law that the community estate included debt totaling $656,548.13.

### A. Standard of Review

Trial courts have wide discretion in making a just and right division of marital property; we review a trial court's division for an abuse of discretion. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Zorilla*, 83 S.W.3d at 252. As previously stated, in family law cases, the traditional sufficiency standards of review overlap with the abuse-of-discretion standard of review; thus, legal insufficiency is not an independent ground of error but is a relevant factor in our assessment of whether the trial court abused its discretion. *Zorilla*, 83 S.W.3d at 252. We presume the trial court did not abuse its discretion in dividing the estate, and we will not disturb the division on appeal unless the appellant demonstrates a clear abuse of discretion. *Murff*, 615 S.W.2d at 698.

The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also Lozano v. Lozano*, No. 13-08-00536-CV, 2009 WL 4882816, at *3 (Tex. App.–Corpus Christi Dec. 17, 2009, no pet.) (mem. op.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.–San Antonio 2006, no pet.); *see also Lozano*, 2009 WL 4882816, at

6

*4.

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of his issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001); *see also Rojas v. Rojas*, No. 13-02-167-CV, 2004 WL 43227, at *2 (Tex. App.–Corpus Christi Jan. 8, 2004, no pet.) (mem. op.). If there is no evidence to support the finding, we will examine the entire record and determine if the contrary proposition is established as a matter of law. *Francis*, 46 S.W.3d at 241. We will conclude that the evidence is legally insufficient only if the contrary proposition is conclusively established. *Id.* In a legal sufficiency review, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 822.

**B.  Analysis**

As the party seeking entitlement to an award of the properties alleged in his petition for divorce, it was Juan's burden in the trial court to adequately describe the assets and liabilities of the community estate and establish their respective values. *See Capellen v. Capellen*, 888 S.W.2d 539, 542-43 (Tex. App.–El Paso 1994, writ denied); *Haley v. Haley*, 713 S.W.2d 801, 803 (Tex. App.–Houston [1st Dist.] 1986, no writ); *see also Suarez v. Suarez*, No. 13-04-108-CV, 2006 WL 1194960, at *2 (Tex. App.–Corpus Christi May 4, 2006, no pet.) (mem. op.). Juan contends that he satisfied his burden because "[t]he evidence admitted establishes as a matter of law that the community estate owed a

7

substantial debt of at least $656,548.13." We disagree.

Juan points to the following as "documents of record that establish a substantial community debt": (1) a financial statement dated December 31, 2006; (2) his sworn inventory filed on September 4, 2007; (3) his supplemental sworn inventory filed on September 9, 2008; (4) Juan and Yolanda's tax returns for the years 2004 and 2005; (5) the 2004 and 2005 "General Ledgers" of La Cantera; and (6) one page of an expert report admitted into evidence by Yolanda's expert witness. Juan also asserts that his testimony, Yolanda's testimony, and an "[a]dmission by [Yolanda]'s counsel" establish debt of the community estate as a matter of law.

### 1. Financial Statement, Tax Returns, and General Ledgers

At the June 2008 divorce proceeding, the trial court admitted La Cantera's "Financial Statement for the period ending December 31, 2006" into evidence. The balance sheet reflects that as of December 31, 2006, La Cantera's "long[-]term liabilities" consisted of three First National Bank notes—identified as #345732, #1700273, and #6001892—totaling $656,548.13. The trial court also admitted Juan and Yolanda's tax returns for the years 2004 and 2005. The tax returns reflect that Juan and Yolanda paid interest to First National Bank in 2004 and 2005. La Cantera's 2004 and 2005 "General Ledgers" were also admitted into evidence. The 2004 General Ledger describes La Cantera's long-term liabilities as one "GMAC note" and three First National Bank notes totaling $420,086.22—these notes are identified as #301172, #316248, and #316252. The 2005 General Ledger describes La Cantera's long-term liabilities as one "Bank of America" note, one "GMAC note" and one First National Bank note for $517,137.69—identified as #345732.

The value of community assets and liabilities is generally determined at the date of

8

divorce or as close to it as possible. *See Handley v. Handley*, 122 S.W.3d 904, 908 (Tex. App.–Corpus Christi 2003, no pet.); *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 837 (Tex. App.–Texarkana 1996, writ denied); *see also Suarez*, 2006 WL 1194960, at *2. Juan failed to provide evidence of La Cantera's liabilities at the time of, or close to the time of his divorce from Yolanda. Although the general ledgers and tax returns offer evidence of La Cantera's long-term liabilities in 2004 and 2005, the parties' divorce hearing was held in June 2008. The general ledgers and tax returns offer no indication as to the existence or the amount of liabilities of the community estate at the time of the divorce. *See Handley*, 122 S.W.3d at 908; *Grossnickle*, 935 S.W.2d at 837; *see also Suarez*, 2006 WL 1194960, at *2. Juan also contends that La Cantera's December 31, 2006 financial statement establishes "that the community estate owed a substantial debt of at least $656,548.13." However, even if this was the value of Juan and Yolanda's indebtedness as of December 31, 2006, it does not conclusively prove the existence or the amount of indebtedness at the time of divorce. *See Handley*, 122 S.W.3d at 908; *Grossnickle*, 935 S.W.2d at 837; *see also Suarez*, 2006 WL 1194960, at *2.

**2. Sworn and Supplemental Inventory and Expert Report**

On September 4, 2007, Juan filed a sworn inventory with the trial court listing First National Bank account number "17002793" and account number "345732," with the payment amounts of $1,565.74 and $5,732.21, respectively. The sworn inventory does not state the frequency of the payments, and no amount is listed in the "Amount Owed" column of the inventory. The information on the purported First National Bank loans listed on the supplemental sworn inventory filed on September 9, 2008, mirrors the information on Juan's September 4, 2007 sworn inventory.

A report prepared by Darryl Baird, Yolanda's expert witness who testified regarding

9

the value of La Cantera, was admitted into evidence at the June 2008 divorce proceeding. Juan points to the "[p]rincipal on [r]eal [e]state [l]oans" and "[i]nterest expense-real estate" listed in the report for the years 2004-2007, as proof that La Cantera had substantial debt. Juan also points to a footnote in the report that states that "[a] total of $65,936 are actual principal amounts paid on two real estate loans . . ." as further proof of La Cantera's liabilities at the time of Juan and Yolanda's divorce. However, neither the sworn inventories nor the excerpt from Baird's report adequately describe the liabilities of the community estate or establish their respective values. *See Handley*, 122 S.W.3d at 908; *Grossnickle*, 935 S.W.2d at 837; *see also Suarez*, 2006 WL 1194960, at *2.

### 3. Juan's Testimony

Additionally, Juan asserts that his testimony during the June 2008 divorce proceeding establishes the existence and amount of a community liability. Specifically, Juan points to an answer he gave during cross-examination regarding a $12,500 liability listed on a document entitled "Preliminary Personal Financial Statement for Mr. [and] Mrs. Juan Hernandez" which had previously been admitted into evidence:

> [Yolanda's Counsel]: Okay. And it shows on the following page First National Bank $12,500. What was that?
>
> [Juan]: I have no idea what this is. I know that at First National I only have two loans, one for the original which is like around maybe close to 497,000, and then another one for 165,000.

No further testimony was given as to these two loans. Juan does not clarify what these loans pertained to, when the loans were obtained, whether the original amounts of the loans were $497,000 and $165,000, or whether these amounts were the balance of the notes on the loans at the time of the divorce.

During Juan's cross-examination, Yolanda's counsel attempted to offer into

evidence "payoff statements" dated April 30, 2008, for two loans from First National Bank. Juan testified that he did not have his eyeglasses and was unable to read or identify the exhibit; the exhibit was not admitted into evidence. During direct examination of Yolanda, Yolanda's counsel again attempted to admit the purported "payoff statements" into evidence. Juan's counsel objected to the "authenticity" of the payoff statements. The trial court sustained Juan's counsel's objection, and the exhibit was not entered into evidence.

On appeal, Juan urges that we consider the excluded "payoff statements" as evidence of liability of the community estate. However, excluded evidence cannot be considered proof to establish that the community estate had substantial debt. *See State Bar of Tex. v. Grossenbacher*, 781 S.W.2d 736, 738 (Tex. App.–San Antonio 1989, no writ) ("In order for evidence to be considered as proof in a case, it must be admitted at trial."). Thus, the "payoff statements" offered by Yolanda and excluded by the trial court do not serve as proof of liabilities of the community estate at the time of the divorce. *See id.*

### 4. Counsel's Admission

During his opening statement, Yolanda's trial counsel stated, "There is a note to First National Bank, which is the only indebtedness against La Cantera, for $599,564 . . . ." Juan asserts that this "admission" by Yolanda's counsel is proof of liabilities of the community estate. Opening statements are not evidence. *See Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 756 (Tex. App.–Fort Worth 1998, no pet.); *Carrasco v. Tex. Transp. Inst.*, 908 S.W.2d 575, 580 (Tex. App.–Waco 1995, no writ); *Border Apparel-East, Inc. v. Guadian*, 868 S.W.2d 894, 898 n.6 (Tex. App.–El Paso 1993, no writ). Therefore, even if this statement was an "admission," we cannot consider it in our analysis. *See Grossenbacher*, 781 S.W.2d at 738.

Viewing the evidence in the light most favorable to the trial court's finding, crediting

11

favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not, we conclude that the evidence presented did not conclusively establish as a matter of law "that the community estate owed a substantial debt of at least $656,548.13." *See City of Keller*, 168 S.W.3d at 807. Thus, the evidence was legally sufficient to support the trial court's adverse finding. *See Capellen*, 888 S.W.2d at 543. We conclude that the trial court did not abuse its discretion in dividing the marital estate. *See Zorilla*, 83 S.W.3d at 252. Accordingly, we overrule Juan's sole issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of September, 2010.

12