**In the MATTER OF M.K., a Juvenile**

NO. 02–16–00291–CV

Court of Appeals of Texas, Fort Worth.

DELIVERED: January 23, 2017

Mike Berger, Fort Worth, TX, for Appellant.

Sharen Wilson, Criminal District Attorney; Debra Windsor, Chief of Post Conviction; Mark Kratovil, Riley N. Shaw, Assistant Criminal District Attorneys for Tarrant County, Fort Worth, TX, for State.

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

## OPINION

LEE GABRIEL, JUSTICE

Appellant M.K.[1] is now fifty-nine years old. The State alleges that on August 7, 1973—when Appellant was fifteen years old—he murdered fourteen-year-old D.R. The State previously filed a delinquent-child petition in juvenile court against Appellant in 1973 alleging that he murdered D.R., but the juvenile court ultimately dismissed the case at the State's request because of insufficient evidence. According to the State, the case went cold until 2015, when investigators discovered previously unknown evidence implicating Appellant in D.R.'s murder. The State now seeks to prosecute him for that offense.

Because Appellant was fifteen years old at the time of the alleged offense and is now well over eighteen years of age, the State filed a petition in the juvenile court pursuant to section 54.02(j) of the Texas Family Code asking it to waive its jurisdiction over this case and to transfer Appellant to the criminal district court. *See* Tex. Fam. Code Ann. § 54.02(j) (West 2014). After holding an evidentiary hearing, the juvenile court signed an amended order waiving jurisdiction and transferring Appellant to the criminal district court.[2] Appellant appeals from that amended waiver and transfer order. Because we conclude that the juvenile court's amended waiver and transfer order is void, we vacate that order and dismiss this appeal.

## I. BACKGROUND

### A. THE INITIAL MURDER INVESTIGATION

D.R.'s homicide remained a cold case from the time the delinquent-child petition against Appellant was dismissed on January 22, 1974 until early 2015, when a brother of D.R. contacted a detective in the Cold Case Unit at the Fort Worth Police Department (FWPD) to inquire about it. That detective gathered some of the original paperwork related to the case. In May 2015, D.R.'s brother again contacted the FWPD Cold Case Unit, this time speaking to Detective Michael McCormack. After receiving the phone call from D.R.'s brother, Detective McCormack reviewed the case file and learned the following information. At some point on August 7, 1973, Appellant's parents and sisters left their house to go visit family. As they were leaving, Appellant's parents saw him playing basketball with D.R. in the driveway. When Appellant's family returned to the house later that day, they discovered that a large rock had been thrown through the sliding glass door leading to their back patio. One of Appellant's sisters went into a hallway bathroom and discovered D.R. dead on the floor. He had been shot in the face with a shotgun and stabbed multiple times with a kitchen knife, which had been left in his chest.

D.R.'s injuries were so severe that Appellant's mother, R.K., initially believed Appellant was the deceased victim, but she learned that was not the case after Appellant's uncle, E.M., called her and told her that Appellant was with him at his house, which was a couple of miles away. E.M. stated that Appellant had run to his house and told him that somebody had broken into his house and that his friend was dead. E.M. also called the police and then drove Appellant back to his house. By the time E.M. arrived back at the crime scene with Appellant, FWPD investigators were

1. Because this appeal arises out of a case under Title 3 of the Texas Family Code, we use aliases for all individuals who were minors at the time of the alleged offense and their family members throughout this opinion. *See* Tex. R. App. P. 9.8(c)(2).

2. The juvenile court signed its original order on August 8, 2016. It amended that order on August 24, 2016. The amended order is the subject of this appeal.

already on site, and an Officer Earl Ferguson spoke with Appellant. Appellant told Officer Ferguson that he and D.R. were playing basketball when D.R. asked Appellant to use the bathroom. Appellant stated that he escorted D.R. inside the house to the bathroom and then went back outside to continue playing basketball by himself. He said that he continued to play basketball by himself for a few minutes when he heard the sound of glass breaking coming from the back of his house. Appellant said he went to the back of the house, heard a gunshot, and then fled to his uncle's house.

Inside the house, officers discovered wadding belonging to a 16–guage shotgun shell in the bathroom where D.R. was killed.[3] They also found a 16–guage shotgun in the master bedroom closet, which smelled like it had been recently fired. Investigators recovered the knife from D.R.'s chest, and R.K. confirmed that it was one of the knives from her kitchen. Officers further discovered that a large floor model console television had been turned over in front of the back patio door. Some of the broken glass from the back patio door was on top of the overturned television, but when officers picked up the television, there was no glass underneath it, suggesting that it had been overturned before the sliding glass door was broken.

Investigators interviewed a few individuals in the neighborhood. They interviewed two boys, R.H. and M.P., who were about the same age as Appellant. They told officers that the day before D.R. was killed, they were both at Appellant's house playing basketball with Appellant and that Appellant asked them separately to come inside his house. R.H. stated that when he walked into the house, Appellant pointed a shotgun at him, pulled the trigger, and said, "Talk noise now." M.P. stated that when he went in the house separately, Appellant pointed a shotgun at him and then later showed him another shotgun in a bedroom. Officers also interviewed fourteen- or fifteen-year-old C.G., who lived in a house about 400 yards behind Appellant's. C.G. stated that on the day of the homicide, he was outside in his yard when he heard a crash. He looked in the direction of the sound, which was the back of Appellant's house, and he saw a young black male walking away from the sliding glass door. Another neighbor told officers that her dogs were in her backyard and that they barked at everything. But her dogs did not bark until officers arrived at Appellant's house.

### B. The Initial Delinquent-Child Petition

In reviewing the case file, Detective McCormack further learned that the State filed a delinquent-child petition against Appellant in juvenile court on August 24, 1973, alleging that he had murdered D.R. with a shotgun. The State amended its petition twice, filing its third and final amended petition on January 7, 1974, in which it alleged Appellant (1) had murdered D.R. on August 7, 1973 "by shooting him with a gun and stabbing and cutting him with a knife"; (2) had committed aggravated assault with a deadly weapon against R.H. on August 6, 1973; and (3) had committed aggravated assault with a deadly weapon against M.P. on August 6, 1973.

### C. Dismissal of the Initial Delinquent-Child Petition

Detective McCormack discovered that on January 22, 1974, the State moved to

---

**3.** At the certification hearing, Officer McCormack testified that "[w]adding is the paper that basically holds the pellets in" and that when a shotgun shell is fired, some of the wadding paper comes out in addition to all of the pellets.

dismiss the case it filed against Appellant because "the evidence was insufficient." Upon learning that the case had been dismissed against Appellant, Detective McCormack contacted Riley Shaw, an Assistant District Attorney with the Tarrant County District Attorney's office, on June 29, 2015 to find out what he would need to do in order to move forward on the case. Shaw told McCormack that he would try to find his office's original notes on the case to see if there was any other information as to why the case against Appellant had been dismissed. On July 23, 2015, Detective McCormack met with Shaw to discuss the case.[4] Shaw informed McCormack that he had been unable to locate any notes regarding why the case had been dismissed, but he noticed that the motion to dismiss had been filed by then Assistant District Attorney Billy Mills,[5] so Shaw and Detective McCormack called Mills to ask him about the case. When Detective McCormack and Shaw spoke with Judge Mills, he stated that he remembered the case involving Appellant. He elaborated that the case had been dismissed for insufficient evidence because although he believed Appellant was responsible for D.R.'s death, he did not believe he could disprove Appellant's story that a home intruder had murdered D.R. Shaw then told Detective McCormack that the case could be re-opened to see if he could uncover any new evidence.

### D. THE RE-OPENED INVESTIGATION

Detective McCormack contacted Officer David Whisenhunt, who was one of the officers who originally investigated the crime scene after D.R.'s murder. Officer Whisenhunt stated that he remembered the case and that he believed the crime scene had been staged. Detective McCormack then brought Appellant to his office for an interview. Appellant stated that D.R. went into the house alone and that he continued to play basketball outside until he heard glass breaking in the back of the house.[6] Appellant said he went to the back of the house, saw broken glass on the patio, and heard a gunshot. Unlike his previous account, however, Appellant stated that he then saw a white male intruder inside the house and that the intruder pointed a shotgun at him. When the intruder pointed the gun at him, Appellant stated he fled to E.M.'s house. When Detective McCormack asked Appellant about whether he had pointed a shotgun at R.H. or M.P. the day before D.R. was murdered, Appellant denied that he had ever done that.

Detective McCormack interviewed E.M., who stated that he remembered the events and that when Appellant ran to his house, Appellant never told him that he had actually seen an intruder. Detective McCormack contacted R.H., who confirmed that the day before D.R. was murdered, Appellant had pointed a shotgun at him and that Appellant stated he had received the shot-

---

**4.** In the days between Officer McCormack's conversation with Shaw on June 29, 2015 and his meeting with Shaw on July 23, 2015, Detective McCormack learned that the FWPD's property control custodian could not locate any of the physical evidence that had originally been collected in the case and that both of the original "filing detectives" were deceased.

**5.** Billy Mills served as an assistant district attorney in Tarrant County for a total of ten years before he became the judge of County Criminal Court No. 3 in Tarrant County.

**6.** Appellant's original account after the murder was that he had accompanied D.R. into the house, showed him the restroom, and then went back outside to play basketball. In speaking with Detective McCormack, however, Appellant denied that he escorted D.R. into the house.

gun as a birthday present. R.H. also confirmed that M.P. had come out of Appellant's house and stated that Appellant had pointed a shotgun at him.

Detective McCormack also spoke with Appellant's mother, R.K., who still resided at the house where D.R. had been killed. She relayed much of the same information that Detective McCormack had learned when reading over the original case file. However, she provided Detective McCormack with some additional information. She stated that after the police left her house, E.M. told her that he believed Appellant had shot D.R. She also stated that after the police left, Appellant told her that D.R. had gone into the house to use the restroom. Appellant stated that D.R. had been in the restroom for a while, so Appellant went in the house to check on him. Appellant said he found D.R. in the restroom playing with a toy that belonged to Appellant's brother and that he told D.R. to drop the toy. Appellant said when D.R. did not drop the toy, he went to the master bedroom closet, grabbed a shotgun, returned to the bathroom, pointed the shotgun at D.R., and again told him to drop the toy. Appellant told R.K. that D.R. still did not drop the toy, so he shot him. Appellant told R.K. that although he did not remember anything after he shot D.R., he must have also stabbed him. R.K. also told Detective McCormack that Appellant is the one who broke the sliding glass door. R.K. told Detective McCormack that she chose not to disclose to police the information Appellant told her because the police had already left and because one of the police officers was mean and believed Appellant had shot D.R. on purpose.

Based on the new information R.K. had provided, the FWPD arrested Appellant for murder. He was transported to the FWPD homicide office, where Detective McCormack informed him that he was un-

der arrest for murder and read him his *Miranda* warnings. Detective McCormack informed Appellant that he had spoken to R.K. and asked Appellant if he wanted to hear what she told him, and Appellant said that he did. Detective McCormack played the portion of the taped interview with R.K. in which she stated that Appellant told her that he shot D.R., and Appellant stated that he did not want to hear any more of the taped interview. Appellant then told Detective McCormack that he did not mean to kill D.R. He stated that he and D.R. were in the house playing with guns, which was his idea. He stated that D.R. pointed a gun at him and pulled the trigger, but nothing happened. Then Appellant pulled the trigger on his gun and heard a blast. Appellant stated that he could not remember anything after that. When Detective McCormack told Appellant that he did not believe D.R. had a gun and that the evidence did not show that D.R. ever had a gun, Appellant admitted it was true D.R. did not have a gun. Appellant further acknowledged that he knew the shotgun was dangerous, and he admitted that he had pointed a shotgun at kids four or five times before he shot D.R.

## II. THE WAIVER AND TRANSFER PROCEEDING

The State filed a petition under section 54.02(j) of the Texas Family Code asking the juvenile court to waive its exclusive original jurisdiction over Appellant and to transfer him to the criminal district court for criminal proceedings. *See* Tex. Fam. Code Ann. § 51.04(a) (West Supp. 2016) (providing that the juvenile courts have exclusive original jurisdiction over all proceedings involving the delinquent conduct engaged in by a person who was a child at the time he engaged in the conduct), § 54.02(j) (authorizing the juvenile courts to waive their exclusive jurisdiction over, and to transfer to criminal district courts,

persons above the age of eighteen years); *see also In re N.J.A.*, 997 S.W.2d 554, 555 (Tex. 1999) (stating that the juvenile courts have exclusive original jurisdiction over all proceedings involving a defendant who was a child when the alleged offense occurred). The juvenile court held an evidentiary hearing, and among the evidence the State presented was the testimony of Detective McCormack, Judge Mills, Officer Ferguson, and Officer Whisenhunt. Following the hearing, the juvenile court signed its amended order waiving jurisdiction and transferring Appellant to the criminal district court. As relevant to this case, the juvenile court made the following findings in its amended order:

> The court finds that the Respondent is 18 years of age or older and that for a reason beyond the control of the State, it was not practicable to proceed in juvenile court before the 18th birthday of the Respondent[,] and new evidence has been discovered since the 18th birthday of the Respondent that, after due diligence of the State, was not discovered by the State until after the 18th birthday of the Respondent. Specifically, the Respondent is the only known witness to the commission of this offense. When the Respondent spoke to the police in 1973, he told them that an intruder had broken into his home and murdered the victim, while the Respondent was outside playing basketball. Further when police searched the crime scene, they discovered that the rear sliding glass door to the Respondent's home had been shattered by a large rock, and the console television in the living room was face down on the floor as if someone had broken into the home. Police also determined that the victim was shot with a gun belonging to the Respondent's family and was stabbed with a knife belonging to the Respondent's family. Shortly after the Respondent spoke with police,

either later that night or the next day, the Respondent confessed to his mother and admitted that he had killed the victim, but Respondent's mother did not disclose that confession to the police or to the [S]tate until 2015 despite having had contact with the police in 1973 after Respondent confessed to her. In fact, no confession by Respondent to any person was known by the police or the [S]tate prior to the Respondent's 18th birthday, nor was any confession known to the police or to the [S]tate prior to 2015. Further, in 2015 shortly after Respondent's mother made Respondent's 1973 confession known to the police, the Respondent then also confessed to the shooting of the victim. The court finds that, due to the lack of sufficient evidence known to law enforcement and the [S]tate prior to Respondent's 18th birthday in contravention of Respondent's story about an intruder causing the death of the victim, and in light of new evidence [of] Respondent's guilt discovered until after Respondent's 18th birthday, it was not practicable to proceed prior to Respondent's 18th birthday.

## III. APPELLANT APPEALS

In his first issue, Appellant contends that the juvenile court abused its discretion by waiving its jurisdiction over this case and transferring him to the criminal district court. He specifically challenges the juvenile court's findings under subsection 54.02(j)(4), which provides that before the juvenile court may waive its jurisdiction and transfer a person to criminal district court, it must

(4) . . . find from a preponderance of the evidence that:

(A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or

(B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

> (i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;
>
> (ii) the person could not be found; or
>
> (iii) a previous transfer order was reversed by an appellate court or set aside by a district court.

Tex. Fam. Code Ann. § 54.02(j)(4). In response, the State argues that we should overrule this issue because the record supports a finding under subsection 54.02(j)(4)(A) that for a reason beyond the control of the state, it was not practicable to proceed in juvenile court before Appellant's eighteenth birthday. *See id.* § 54.02(j)(4)(A).

## IV. JURISDICTION

The arguments raised in Appellant's first issue, the State's reliance on subsection 54.02(j)(4)(A) for the efficacy of the juvenile court's amended waiver and transfer order, and our review of the record and governing legal authorities in light of the particularly unique facts of this case have led us to conclude that we must first consider (1) whether the juvenile court had subject-matter jurisdiction to conduct the waiver and transfer proceeding and render the amended waiver and transfer order that is the subject of this appeal and, consequently, (2) whether we have jurisdiction to decide this appeal. *See Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623–24 (Tex. 2012) (stating that appellate courts have no authority to consider the merits of an appeal from an order rendered by a trial court that lacked jurisdiction). Although neither party raised this issue during the juvenile court's certification hearing or in their briefing before this court, subject-matter jurisdiction may not be waived, and we are obliged to consider it sua sponte. *Id.* (stating that jurisdiction must be considered, even if that consideration is sua sponte); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) (stating that subject-matter jurisdiction may not be waived). In undertaking that inquiry, we begin with an examination of the history of subsection 54.02(j)(4).

### A. THE HISTORY OF FAMILY CODE SUBSECTION 54.02(j)(4)

■ As it exists today, the Juvenile Justice Code is codified as Title 3 of the Texas Family Code. *See* Tex. Fam. Code Ann. §§ 51.01–61.107 (West 2014 & Supp. 2016). The legislature did not add the current version of subsection 54.02(j)(4) to Title 3 until 1995. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1476–1477, *amended by* Act of May 19, 1975, 64th Leg., R.S., ch. 693, § 16, 1975 Tex. Gen. Laws 2152, 2156–57, *amended by* Act of May 8, 1987, 70th Leg., R.S., ch. 140, § 3, 1987 Tex. Gen. Laws 309, 309, *amended by* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, 1995 Tex. Gen. Laws 2517, 2533–34. Before the current version of subsection 54.02(j)(4) went into effect, subsection 54.02(j)(4) of the Texas Family Code provided as follows:

> (j) The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if:
>
> . . .
>
> (4) the juvenile court finds from a preponderance of the evidence that after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

(A) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person; or

(B) the person could not be found. Act of May 8, 1987, 70th Leg., R.S., ch. 140, § 3, 1987 Tex. Gen. Laws 309, 309; *see In re P.L.G.*, No. 05–95–00002–CV, 1995 WL 591208, at *2 n.1 (Tex. App.– Dallas Oct. 3, 1995, writ denied) (not designated for publication) (setting forth the text of subsection 54.02(j)(4) as it existed prior to the changes the 74th Legislature made to that subsection in 1995). In 1995, the legislature enacted H.B. 327, which amended the 1987 version of subsection 54.02(j)(4) to its current form. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, sec. 54.02, 1995 Tex. Gen. Laws 2517, 2533–34.

When comparing the current version of subsection 54.02(j)(4) with the previous version, it is evident that one change H.B. 327 made to subsection 54.02(j)(4) was to add for the first time the language that the State relies upon for the efficacy of the juvenile court's amended waiver and transfer order in this case—that is, it added the language authorizing a juvenile court to waive jurisdiction and transfer a person who is eighteen years of age or older and who committed an offense when he was a child to criminal district court by finding, by a preponderance of the evidence, that "for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person." *See id.*

H.B. 327 expressly provided that the changes it made to the law, which included the addition of this new provision, became effective January 1, 1996. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 105, 1995 Tex. Gen. Laws 2517, 2590–91. However, while the amended subsection became effective January 1, 1996, H.B. 327 also expressly limited the applicability of the changes it made in the following way:

(a) Except as provided by Subsection (b)[7] of this section, this Act applies only to conduct that occurs on or after January 1, 1996. Conduct violating a penal law of this state occurs on or after January 1, 1996, if every element of the violation occurs on or after that date. Conduct that occurs before January 1, 1996, is governed by the law in effect at the time the conduct occurred, and that law is continued in effect for that purpose.

Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 106(a), 1995 Tex. Gen. Laws 2517, 2591.

It is undisputed that the conduct forming the basis of the State's waiver and transfer petition in this case occurred on August 7, 1973. Thus, under the plain terms of section 106 of H.B. 327, the changes made by that Act—which, as noted above, include the addition of the current subsection 54.02(j)(4)(A) language— do not apply to this case. *Id.* Rather, H.B. 327 mandates that because this case involves conduct that occurred before January 1, 1996, it is governed by the law in

---

7. Subsection (b) is not relevant here; it provides,

(b) Chapter 55, Family Code, as amended by this Act, applies only to conduct that occurs on or after the effective date of that chapter. Conduct violating a penal law of this state occurs on or after that date if every element of the violation occurs on or

after that date. Conduct that occurs before the effective date of that chapter is governed by the law in effect at the time the conduct occurred, and that law is continued in effect for that purpose.

Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 106(b), 1995 Tex. Gen. Laws 2517, 2591.

effect at the time the conduct occurred.[8] *Id.* Accordingly, we conclude that this case is governed by the law in effect on August 7, 1973, the date on which Appellant allegedly killed D.R. *See id.*; *In re N.M.P.*, 969 S.W.2d 95, 98 (Tex. App.–Amarillo 1998, no pet.) (applying version of Texas Family Code in effect on September 2, 1987 notwithstanding fact that H.B. 327 became effective January 1, 1996, because September 2, 1987 is when the defendant allegedly engaged in the conduct at issue); *In re N.J.A.*, 991 S.W.2d 868, 869–70, 870 n.2 (Tex. App.–Houston [1st Dist.] 1997) (applying statute in effect at the time the conduct occurred and noting that "certain portions of the Family Code were amended in 1995, but they do not apply to the current case because the alleged delinquent conduct occurred in 1994." (citations omitted)), *rev'd on other grounds*, 997 S.W.2d 554 (Tex. 1999); *In re J.E.V.*, No. 04–96–00125–CV, 1996 WL 591928, at *1 & n.1 (Tex. App.–San Antonio Oct. 16, 1996, no pet.) (not designated for publication) (applying law that existed on June 28, 1993, the date the conduct occurred, to allow interlocutory appeal of juvenile court's waiver and transfer order under subsection 54.02(j) even though H.B. 327 removed the provision in the Family Code that had previously permitted such interlocutory appeal and took effect on January 1, 1996, because conduct at issue occurred prior to January 1, 1996).

## B. THE LAW IN EFFECT ON AUGUST 7, 1973

Title 3 was first enacted by the 63rd Legislature on May 25, 1973, but it did not become effective until September 1, 1973. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 544, §§ 1, 4, 1973 Tex. Gen. Laws 1460, 1460–85; *Ex parte Morgan*, 595 S.W.2d 128, 129 (Tex. Crim. App. 1980) (stating that Title 3 did not go into effect until September 1, 1973). Thus, Title 3 was not in effect on August 7, 1973. The predecessor statute to Title 3 was Article 2338–1 of the Revised Civil Statutes of Texas. *See* Act of Apr. 21, 1943, 48th Leg., R.S., ch. 204, 1943 Tex. Gen. Laws 313, *amended by* Act of June 9, 1949, 51st Leg., R.S., ch. 368, 1949 Tex. Gen. Laws 702, *amended by* Act of Apr. 26, 1951, 52nd Leg., R.S., ch. 156, 1951 Tex. Gen. Laws 270, *amended by* Act of May 5, 1953, 53rd Leg., R.S., ch. 165, 1953 Tex. Gen. Laws 475, *amended by* Act of May 8, 1959, 56th Leg., R.S., ch. 431, 1959 Tex. Gen. Laws 934, *amended by* Act of May 26, 1965, 59th Leg., R.S., ch. 577, 1965 Tex. Gen. Laws 1256, *amended by* Act of May 24, 1967, 60th Leg., R.S., ch. 475, 1967 Tex. Gen. Laws 1082, *amended by* Act of April 24, 1969, 61st Leg., R.S., ch. 171, 1969 Tex. Gen. Laws 505, *amended by* Act of May 27, 1969, 61st Leg., R.S., ch. 492, 1969 Tex. Gen. Laws 1598, *amended by* Act of May 28, 1969, 61st Leg., R.S., ch. 663, 1969 Tex. Gen. Laws 1963, *amended by*, Act of Oct. 13, 1972, 62nd Leg., 4th C.S., ch. 20, 1972 Tex. Gen. Laws 43, *repealed by* Act of May 25, 1973, 63rd Leg., R.S., ch. 544, § 3, 1973 Tex. Gen. Laws 1460, 1485; *Morgan*, 595 S.W.2d at 129 (noting that predecessor statute to Title 3 was Article 2338–1 of the Revised Civil Statutes of Texas); *Ex parte Trahan*, 591 S.W.2d 837, 838–39 (Tex. Crim. App. 1979) (same). Accordingly, we conclude that Article 2338–1, as effective on August 7, 1973, is the law that governs this case. Having so concluded, the jurisdictional question presented here is whether, under that law, the juvenile court in this case had jurisdiction to conduct the waiver and transfer

---

**8.** We recognize that the legislature has made additional amendments to Title 3 since 1995. But we have found no act of the legislature subsequent to its enactment of H.B. 327 in 1995 that would alter the conclusion that the law that governs this case is the law that was in effect when the conduct occurred.

proceeding that is the subject of this appeal. We conclude that it did not.

## C. THE JUVENILE COURT'S JURISDICTIONAL LIMITS UNDER ARTICLE 2338-1

As effective on August 7, 1973, section 5 of Article 2338-1 vested the juvenile courts with "exclusive original jurisdiction in proceedings governing any delinquent child." *See* Act of May 24, 1967, 60th Leg., R.S., ch. 475, § 3, sec. 5(a), 1967 Tex. Gen. Laws 1082, 1083; *Morgan*, 595 S.W.2d at 129; *Trahan*, 591 S.W.2d at 841. Section 3 of Article 2338-1 defined the term "child" as "any person over the age of ten years and under the age of seventeen years." *See* Act of Oct. 13, 1972, 62nd Leg., 4th C.S., ch. 20, § 1, sec. 3, 1972 Tex. Gen. Laws 43, 43; *Trahan*, 591 S.W.2d at 841. The term "delinquent child" included any child who "violate[d] any penal law of this state of the grade of a felony[.]" *See* Act of Oct. 13, 1972, 62nd Leg., 4th C.S., ch. 20, § 1, sec. 3(a), 1972 Tex. Gen. Laws 43, 43. Under these provisions of Article 2338-1, "[t]he juvenile court is one of limited jurisdiction, and it is confined to those persons 'over the age of ten years and under the age of seventeen years.'" *Miguel v. State*, 500 S.W.2d 680, 681 (Tex. Civ. App.–Beaumont 1973, no writ) (quoting Article 2338-1, § 3). In stark contrast to Title 3, which mandates that the jurisdiction of the juvenile courts is determined by a person's age at the time he allegedly engaged in the delinquent conduct at issue rather than his age at the time of trial, *see* Tex. Fam. Code Ann. § 51.04(a); *Moon v. State*, 451 S.W.3d 28, 37–38 (Tex. Crim. App. 2014), the settled law in applying Article 2338-1 provided the opposite: under Article 2338-1, the jurisdiction of the juvenile courts was determined by the person's age at the time of trial, not his age at the time he allegedly engaged in the delinquent conduct. *See, e.g.*, *Morgan*, 595 S.W.2d at 130 (holding that although defendant was a child at the time he committed the alleged offense, he was not charged with the offense until after he turned seventeen years of age and was no longer a juvenile; thus, the juvenile court never acquired jurisdiction under Article 2338-1); *see also id.* at 131 (Roberts, J., concurring) (stating that "the long–standing judicial rule ... [was] that the jurisdiction of the juvenile court was to be determined [by the defendant's age] as of the time of trial") (citing *Salazar v. State*, 494 S.W.2d 548 (Tex. Crim. App. 1973); *Boyett v. State*, 487 S.W.2d 357 (Tex. Crim. App. 1972); *Dearing v. State*, 151 Tex.Crim. 6, 204 S.W.2d 983 (1947); *Dendy v. Wilson*, 142 Tex. 460, 179 S.W.2d 269 (1944); *Dillard v. State*, 439 S.W.2d 460 (Tex. Civ. App.–Houston [14th Dist.] 1969, writ ref'd n.r.e.)). Thus, for the juvenile court to obtain jurisdiction over a proceeding under Article 2338-1, two elements must be present: "[f]irst, [the person] must be within the age limits set by Section 3 of [Article 2338-1], and second, he or she must have committed one of the enumerated acts." *Miguel*, 500 S.W.2d at 681 (quoting *Steed v. State*, 143 Tex. 82, 183 S.W.2d 458, 459–60 (1944)); *see also Morgan*, 595 S.W.2d at 130 n.1 (explaining same and stating that "if a person had already turned 17 by the time criminal charges were initiated against him, he was not charged as a child but as an adult[;] [h]e was not made subject to the jurisdiction of the juvenile court because the first requirement [that he be a person over the age of ten years and under the age of seventeen years] was lacking").

## D. APPLICATION OF ARTICLE 2338-1

At the time the State filed its waiver and transfer petition in the juvenile court, Appellant was fifty-eight years of age. He therefore was not a "child" under the terms of Article 2338-1. *See* Act of Oct. 13, 1972, 62nd Leg., 4th C.S., ch. 20, § 1,

sec. 3, 1972 Tex. Gen. Laws 43, 43; *Morgan*, 595 S.W.2d at 130 n.1. For that reason, in light of the authorities discussed above, we are compelled to conclude that the juvenile court lacked subject-matter jurisdiction to conduct the waiver and transfer proceeding and to render the amended waiver and transfer order that is the subject of this appeal.

When a court lacks subject-matter jurisdiction over a proceeding, any orders it renders in that proceeding are void. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex. 1995) (stating that a judgment is void when "the court rendering the judgment had no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court"). Accordingly, because the juvenile court lacked subject-matter jurisdiction, its amended waiver and transfer order is void. *Id.* Our jurisdiction in an appeal from a void order is limited to only "determin[ing] that the order or judgment underlying the appeal is void and mak[ing] appropriate orders based on that determination." *Freedom Commc'ns, Inc.*, 372 S.W.3d at 623. When an appealed-from judgment or order is void, we must declare it void, vacate it, and dismiss the appeal. *See Mann v. Denton Cty.*, No. 02–13–00217–CV, 2014 WL 5089189, at *4 (Tex. App.–Fort Worth Oct. 9, 2014, pet. denied) (mem. op.) (citing *Freedom Commc'ns, Inc.*, 372 S.W.3d at 623–24; *Owens*, 907 S.W.2d at 486; *In re T.D.S.T.*, 287 S.W.3d 268, 272 n.8 (Tex. App–Amarillo 2009, pet. denied); *Waite v. Waite*, 150 S.W.3d 797, 800 (Tex. App.–Houston [14th Dist.] 2004, pet. denied)).

## V. CONCLUSION

Having concluded that the juvenile court lacked subject-matter jurisdiction, we declare its August 24, 2016 amended waiver and transfer order void, vacate that order, and dismiss this appeal.[9]

9. In light of our conclusion that we lack jurisdiction over this appeal, we do not address Appellant's second issue.